# Richmond.

## SCHAUBUCH v. DILLEMUTH.

March 12, 1908.

Absent, Keith, P.

1. ADVERSE POSSESSION—*Possession of , Vendor After Conveyance.*—The possession of a vendor of land after a conveyance in fee to his grantee is in subserviency to the grantee, and a clear, positive and continued disclaimer and disavowal of such relation, and the assertion of an adverse right, brought home to the knowledge of the true owner, are indispensable to change the character of the ·grantor's possession and render it adverse to the grantee.

2. ADVERSE POSSESSION—*Possession by Mistake—Intention to Hold Adversely—Case at Bar.*—Where a person occupies and possesses the land of another through a misapprehension or mistake as to the boundaries of his land, with no intention to claim as his own that which does not belong to him, but only intending to claim to the true line, wherever that may be, he does not hold adversely, and the reason why this is so is because in this State *intention* to hold adversely is an indispensable requisite to adverse possession, and such intention is then wanting. In the case at bar, fifty acres of land were sold and conveyed, and subsequently a fence was run, by which the grantor cut off to the grantee only thirty-three acres. The evidence does not show that the grantor, with the knowledge of the grantee, asserted an adverse claim to that part of the fifty acres on the side of the fence next to the grantor, or that he claimed or intended to hold to the fence unless that was upon the true line. The evidence tends to show the contrary, and that the fence was placed where it was by mistake.

3. EVIDENCE—*Adverse Possession—Intention—Admissions of Occupant.*— Where the intention with which land is held becomes a material enquiry in a case, the admissions of the party holding and any evidence which tends to show such intention in any degree is admissible, although the court may not think it entitled to great weight with the jury.

4. EVIDENCE—*Admissibility for Some Purposes—General Objection.*— Where evidence is admissible for a particular purpose, it is not reversible error to admit it without restricting it to that purpose, if the objection to its admissibility is general.

Error to a judgment of the Circuit Court of Nottoway county in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Abraham C. Eby* and *Henry E. Lee,* for the plaintiff in error.

*William H. Mann* and *T. Freeman Epes,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action of ejectment, in which the plaintiff claims title to the land in controversy through a conveyance from the defendant, made in the year 1870 to his father, Henry Schaubuch.

The documentary evidence establishes a good paper title in the plaintiff. The question upon the merits for our decision is whether that title has been lost or defeated by the exclusive possession of the land by the defendant for more than fifteen years.

The defendant introduced no evidence, but demurred to that of the plaintiff.

It appears from the evidence that the defendant had been in the exclusive possession of the land in controversy for more than fifteen years prior to the institution of this action; but it does not appear when or how the defendant's possession commenced. By the execution and delivery of the deed to his father for the fifty acres of land sold him in the year 1870, the

defendant's entire legal interest in the premises vested in his father, and if he continued in possession of the land afterwards, his possession was not that of owner, but of a tenant of the grantee.

While there is some conflict as to the character of the vendor's possession under such circumstances, our own decisions, from an early period, and the weight of authority, hold that his possession is in subserviency to the grantee, and that a clear, positive, and continued disclaimer and disavowal of such relation, and the assertion of an adverse right, brought home to the knowledge of the true owner, are indispensable to change the character of the grantor's possession and render it adverse to the grantee. See *Duvall* v. *Bibb,* 3 Call 362, 366-7; *Tabb* v. *Baird,* 3 Call 375; *Rowlett* v *Daniel,* 4 Munf. 473, 483; *Early* v. *Garland,* 13 Gratt. 1, 8; *Creekmur* v. *Creekmur,* 75 Va. 430, 436-7; *Whitlock* v. *Johnson,* 87 Va. 323, 12 S. E. 614; *Va. Mid R. Co.* v. *Barbour,* 97 Va. 118, 121, 33 S. E. 554; 1 Cyc. 1039 and cases cited in Note 2.

But if this doctrine be not applicable to this case, because the defendant delivered to his grantee in the deed of 1870 the actual possession of a part of the land conveyed under the mistaken belief that the boundary delivered contained the fifty acres called for by the deed, and has since held exclusive possession of the land in controversy, does the evidence establish the defendant's claim of adverse possession and bar the plaintiff's right to recover?

It appears that thirty-three of the fifty acres conveyed by the deed of 1870 have been in the actual possession of the grantee in that deed and those who claim under him since the fence which separates the land in controversy from the thirty-three acres was built. When and why that fence was built does not clearly appear; but the evidence tends to show that it was built prior to the year 1880, when Henry Schaubuch conveyed the fifty-acre parcel to John S. Epes, the plaintiff's grantor, and that it may have been built where it was upon the mistaken belief that it

was upon the line between the fifty-acre tract and the defendant's larger tract, of which it formed a part at the time of his conveyance to his father.

If the fence was placed where it is by the defendant, upon the belief that the boundary west of the fence, in the possession of his grantee and those who claim under him, contained fifty acres, when in fact it only contained thirty-three acres, it was a mistake, and the defendant's possession of the seventeen acres on the east side of the fence would not be adverse, unless he intended to claim as his own the land east of the fence, even though the fence was not upon the true line.

Upon this question the cases are not in harmony, but the great weight of authority is in favor of the view, that where a person occupies and possesses the land of another, through a misapprehension or mistake as to the boundaries of his land, with no intention to claim as his own that which does not belong to him, but only intends to claim to the true line, wherever it may be, he does not hold adversely. See 1 Cyc. 1036-1038 and cases cited in Note 96; Warville on Ejectment, secs. 440, 441; Newell on Ejectment.

The reason why such an occupancy and possession could not be adverse with us is, because in this State *intention* to hold adversely is an indispensable element of adversary possession (See *Clarke* v. *McClure,* 10 Gratt. 305, 310; *Early* v. *Garland, supra; Haney* v. *Breeden,* 100 Va. 781, 784, 42 S. E. 916), and it is wanting where the occupant does not intend to claim the fence as his line unless it be the true line.

Before considering the evidence as to the character of the defendant's possession in this phase of the case, it will be necessary to pass upon the assignments of error based upon bills of exception numbered one, two and three.

It appears from bill of exception No. 2 that the plaintiff was permitted to prove that the boundaries of the land conveyed by the deed of 1870 would be exactly the same on the south and

west, whether it contained fifty or only contained thirty-three acres. We do not see how this evidence could have prejudiced the defendant.

It appears from bills of exception Nos. 1 and 3 that the plaintiff was permitted to prove certain verbal admissions made by the defendant, after he learned that the plaintiff was about to purchase the Epes land, which embraced the Henry Schaubuch parcel, which tended to show that if there was not fifty acres in the boundary west of the fence, the defendant recognized the right of Mr. Epes to have the line so located that the boundary west of it would contain that quantity of land. One of the material questions involved in the case, as we have seen, was the intention or motive with which the defendant occupied the land in controversy. The evidence objected to tended to throw light upon that question.

While evidence, as was said in *Parsons* v. *Harper,* 16 Gratt. 64, 74, may not bear immediately and directly upon the contested matters in the case, yet it may serve to illustrate the conduct of a party by throwing light upon the motives by which he may have been prompted. Where this is a material inquiry in the case, if the evidence tends to show it in any degree, it ought not to be rejected, although the court may not think it entitled to great weight with the jury.

The evidence objected to being admissible for the purpose of showing the intention with which the defendant was occupying the land in controversy, although not admissible in this action to show a disclaimer of title, or to establish an equitable estoppel (*Fry* v. *Stowers,* 98 Va. 417, 36 S. E. 482; *Haney* v. *Breeden, supra*), the Court did not err in overruling the defendant's objection to it.

Where evidence is admissible for a particular purpose, it is not error, or at least not reversible error, to admit it without restricting it to that purpose, where the objection to its admissibility is, as in this case, general. *Myers & Sons* v. *Falk,* 99 Va. 385, 38 S. E. 178.

The evidence, considered upon the demurrer to it, manifestly does not sustain the defendant's claim of adversary possession. It does appear that he had exclusive possession of the land in controversy for more than fifteen years, perhaps for twenty-five or thirty years; but it does not appear that he held it under color of title or claim of right. If he held it as the grantor of his father, he held, not adversely, but in subserviency to the grantee, as there is no evidence that he ever disclaimed that relation, and asserted an adverse right, which was brought to the knowledge of his grantee or those claiming under him. If he was holding the land under the mistaken belief that the fence between the thirty-three acres and the land in controversy was the line, the evidence not only fails to show that he intended to claim and hold all the land east of the fence, whether or not it was upon the true line between his land and that which he had conveyed to his father, but it tends strongly to show that he did not occupy the land with the intention of claiming or holding to the fence unless that was upon the true line. When his attention was called to the fact, by his father's vendee, Mr. Epes (after the latter's agreement to sell his farm, which included the fifty-acre parcel, to the plaintiff, but before the purchase price had been paid and the conveyance made), that the boundary west of the fence only contained thirty-three acres, he did not claim that he was the owner of the land immediately east of the fence. On the contrary, he stated that he had sold fifty acres to his father and that Mr. Epes was entitled to that much land. He by agreement went upon the land with Mr. Epes, a surveyor named Rives, and the son of the plaintiff who represented her, to establish the line and mark the corners of the fifty-acre parcel. The surveyor, in accordance with the directions of the defendant ran the line far enough west of the fence to make up the fifty acres called for by the defendant's deed to his father, and marked the corners and line trees thereof. The defendant, not being entirely satisfied with the accuracy of that survey, went upon the land

again with Mr. Epes and another surveyor, and at that time admitted that the survey made by Mr. Rives was practically correct. He some weeks afterwards refused to surrender to the plaintiff possession of the land in controversy, and this action was brought. Upon the trial of the cause he did not go upon the stand to explain his conduct in establishing the new line, nor offer any proof whatever to show the character of his possession.

It may reasonably be inferred from these and the other facts and circumstances of the case, that the defendant, who conveyed fifty acres of land to his father, and received the purchase price thereof, but by mistake only delivered him possession of a boundary containing less than two-thirds of that quantity, and separated that boundary by a fence, did not intend to claim to the fence if it was not on the true line between him and his vendee, especially when that vendee was his own father.

Upon the whole case, we are of opinion that the judgment complained of is plainly right, and should be affirmed.

*Affirmed.*