## Richmond.

## WESTLAND REALTY CORPORATION, ET ALS. v. THOMAS B. GRIFFIN, ET ALS.

December 4, 1928.

The opinion states the case.

*Thomas W. Shelton, Alfred Anderson* and *George N. Wise,* for the plaintiff in error.

*Wm. G. Maupin* and *A. B. Carney,* for the defendants in error.

CRUMP, P., delivered the opinion of the court.

Thomas B. Griffin and others, heirs at law of John T. Griffin, filed in the trial court their petition under section 5490 of the Code of Virginia against the Westland Realty Corporation. The petitioners claimed that they and the Westland Corporation were the owners of two coterminous tracts of land in Norfolk

county, and prayed that the true boundary line between the two tracts of land be ascertained and established. Two other parties were made defendants to the petition because of a deed of trust upon the land of the Westland Corporation. Upon the hearing a jury was waived and after considering the evidence the circuit court entered an order establishing the boundary line in accordance with the contention of the petitioners, whereupon the Westland Corporation obtained a writ of error. The two adjoining tracts of land in question are bounded on the north by a public road running from West Norfolk to Churchland, and both tracts go back to a water line, the Western Branch of the Elizabeth river. The line between the two properties, from the Churchland road to the Western Branch, may be said, for practical purposes in this opinion, to run from the road in a southerly direction towards the Western Branch. The land of the petitioners, formerly known as Kilby's, prior to that as Hatton's, and more recently as Griffin's farm, is on the west of this dividing line, and the Westland Corporation's property, known as Sunnyside farm, lay to the east of this line. The dividing line, therefore, is the eastern boundary of Griffin's farm and the western of Sunnyside.

Plats were filed by both parties, showing their respective claims to the location of the dividing line. Commencing at a point on Churchland road the boundary line running south towards the Western Branch is not in dispute for a distance of about 2,300 feet. This brings the line to a point in a marsh near the head of a gut or little creek which meanders through the marsh to the Western Branch. If the division line, which is practically a straight line from the road, is continued by its extension from the point at or near the head of the creek to the low water mark on Western

Branch, a distance of about 550 feet, it crosses the creek as the latter winds its tortuous course through the marshy area to deep water; and at one point near the branch as the creek deviates to the west this line extended gives to Griffin's farm several acres on the eastern side of the creek. This "little jib of land," as counsel designate it, bounded on the south by the Western Branch and on the north and west by the creek is the cause of this controversy. The claim of the defendant Westland Corporation is that the gut or creek, as its course runs through the marsh, is the true boundary between the lands of the contending parties; in that event the disputed area lying on the eastern side of the creek would belong to Sunnyside.

To sustain their position the petitioners traced their title to Griffins back to a land grant for 472 acres from Governor Berkley in 1665 to one Thomas Norcutt, numerous intervening deeds and other muniments of title being filed as evidence. This land grant describes the tract as beginning at the mouth of a small gut and running north 160 poles, adjoining the land of James Harris, the northern boundary running westwardly and the western line being "a creek side" down to the branch, and then on the branch to the beginning. If this beginning point can be located, and it is shown that the land of James Harris is what is now Sunnyside, then that line running north between Norcutt and Harris seems to be the boundary line sought by the parties. The petitioners get their immediate title as heirs at law of John T. Griffin. The land, along that portion of the boundary in question, was conveyed to J. T. Griffin by Jno. T. Kilby and wife by deed of September 26, 1871. It is there described as situated on the north side of Western Branch, and bounded by the branch, the lands of Jno. S. Wright, the Jordan land and

Carney's creek, evidently meaning that the Wright lands adjoined on the east, and Carney's creek was the western boundary. It is shown that at that time the *lands of Wright* corresponded to or covered the Sunnyside tract.

The petitioners insist that the deeds and other muniments of title filed by them show a complete and valid devolution of title from the Norcutt patent to their immediate ancestor, and taken together with the oral testimony definitely fix the boundary line as claimed by them. The wife of John T. Kilby was a daughter of Thomas Benn, and this property came to her through her father's will and a partition. Thomas Benn acquired it from J. G. Hatton by deed of December 2, 1841. This deed gives the eastern boundary as along the lines of adjoining proprietors only.

The defendant, Westland Corporation, holds its immediate title under a deed to that corporation, conveying the Sunnyside farm, executed by S. L. Drake, February 2, 1920, which was contemporaneous with a deed to Drake from George N. Wise, special commissioner. The Westland Corporation had become interested in the acquisition of this property before this time and its president had the title examined, and a survey made in 1917. These two deeds describe the Sunnyside property as bounded (so far as material here) "on the south by the Western Branch of the Elizabeth river, and on the west by a creek and by the land of John T. Griffin," and further containing 110.66 acres "as shown by the plat of the said Sunnyside farm made by J. R. Kirk, county surveyor, September, 1917," the plat being made a part of and recorded with the deed. This plat, showing the boundary line following the meanderings of the creek, from its mouth at the Western Branch northwardly, was filed by the defendant

corporation as showing the line claimed by it. Mr. Kirk testified on the trial that all his papers and notes were destroyed by a fire in 1918, and he was unable to recall how the western boundary of Sunnyside was determined by him—whether some one showed it to him, or whether he had a deed. George N. Wise, special commissioner, conveyed the right and title of the devisees under the will of W. F. Wise, deceased, probated in February, 1909. W. F. Wise acquired the property from John S. Wright by deed of March 19, 1878, which describes the land, as far as its western boundary is concerned, merely as "bounded as follows, on the west by the lands of John T. Griffin." John S. Wright obtained the property through two deeds, each conveying an one-half interest, the one deed being from John H. Hodges and wife (*nee* Eliza F. C. Benn) dated October 31, 1846, and the other from Thomas S. Benn, dated November 14, 1846. These two deeds describe the property as bounded on the west by lands formerly owned and occupied by John G. Hatton and then owned by Mary H. and Julia A. Benn. The deeds referred to carry the title of each parcel of land back to about 1840, showing the proprietors of Griffins to have been from that time forward, Hatton, Benn, Mrs. Kilby and then John T. Griffin, and of Sunnyside to have been Elizabeth F. C. Benn, Wright, Wise and then the Westland Corporation. None of these papers in the respective chains of title name any points, or trees, or other landmarks by which a boundary line may be started on the Western Branch and run northwardly between the two parcels of land, nor any fixed point north of the branch from which a definite line may be traced south to the branch.

The petitioners trace their title through various deeds to the Norcutt land grant mentioned above. These

links in the title preceding the Hatton deed describe
the Griffin property by the names of the adjoining pro-
prietors, without otherwise fixing the lines. The chain
of title, however, clearly traces the property to the
Norcutt patent, and that patent gives the line in
question here as "beginning at the mouth of a small
gut and so running N. 160 poles," and fixes this line
as the line between the property granted to Norcutt
and the adjoining land of James Harris on the east.
The chain of title to Sunnyside shows that James
Harris did at that time own that property to the east
of Norcutt's patent. Thus far the petitioners prevail,
and if the point at or near the mouth of the small gut
is reasonably ascertained a straight line running north
is the true boundary line.

Turning again to the title papers of Sunnyside,
we find the first deed in which any lines are noted is one
from John Whiddon to John Grimes, of May 15, 1760.
This deed recites that the property was formerly owned
by *Ann Mofett* and became escheated to the Colony,
and was conveyed under an escheat warrant to John
Whiddon by a Colonial land grant signed by the Gover-
nor and dated August 27, 1754. The deed adopts the
lines appearing in the grant. In the grant the name
of the former owner is noted as *Ann Morcett*. The
description in this Whiddon land grant commences at
a point on Western Branch, the southwest corner of the
tract, and then runs the line northwesterly to a pine, a
corner tree, thence southwardly to corner red oak,
thence southeasterly to a red oak near Hatton's house,
thence "south twelve poles to pine standing on a small
point by a creek that makes out of the said Western
Branch of the Elizabeth river, thence by sundry courses
along the said creek to the said Western Branch" and
then "upon the Western Branch by its natural bounds,"

eastwardly to the point of beginning. It is insisted by the defendant Westland Corporation that the boundary in this land grant commencing at a pine standing on a small point by a creek running into the Western Branch, and "thence by sundry courses along the said creek," to the branch, fixes the boundary line as following the meandering of the creek or gut, and indicates ownership on each side of it to the center of the stream. It is evident that in the plat of September, 1917, made by Mr. Kirk he endeavored to fix the "pine standing on a small point," and then ran his line north from the mouth of the creek by several courses according to the meandering of the creek to that point. But the description of this line in the land grant is very general. *Sundry courses along the said creek*, taken in connection with the preceding courses given, would indicate that the line thus described was altogether on the eastern side of the creek, whether there were one or more courses to it, and would also seem to show that there was some doubt as to the exact line of the courses. "Up a run" does not necessarily mean following a watercourse. This is to be determined by the circumstances and may mean merely "in the same direction." *Boggs* v. *Morrison*, 102 W. Va. 240, 135 S. E. 230, and see *Mathews* v. *Gillespie*, 137 Va. 639, 120 S. E. 324.

In *Patterson* v. *Overbey*, 117 Va. 345, 84 S. E. 647, cited by plaintiff in error, the court had nothing before it except the construction of the description of a boundary line in one deed, in which a creek was the boundary throughout the entire line between the properties.

The petitioners met this Whiddon patent, which granted only the one hundred acres owned by Ann

Morcett and which she had allowed to escheat, by tracing Ann Morcett's title back to a land grant to Francis Towers, dated July 16, 1636. By a number of intermediate successive conveyances the land granted to Towers is traced to Ann Morshead. The evidence established beyond question that this Ann Morshead was the same person designated as Ann Morcett in the Whiddon grant, and that the land in the Whiddon grant was a portion of the land, lying on the Western Branch, which came down to Ann Morshead or Morcett from the Towers grant. The Towers grant is for 200 acres on the Western Branch, but is indefinite as to the boundaries. The same is to be said of the subsequent *mesne* conveyances, until we find that Nathaniel Gibbs became the owner of the 200 acres, and in selling one hundred acres of it to John Morshead (the predecessor in title of Ann Morshead) he undertakes to describe its boundaries. Gibbs conveyed this one hundred acres to Morshead by deed of September 11, 1723. The description in this deed is phrased thus: "Lying and being in the Western Branch of Elizabeth river beginning at a pine between ye Fishing creek and ye Western Branch, thence north joining on Thomas Norcutt's line to an oak tree from thence east joyning up on John Connor's line, etc." The reference to Thomas Norcutt's line is evidently to the line appearing in his grant of 1665, as the record shows descendants of Norcutt still owned that property in 1723. The line described in this deed as "beginning at a pine between ye Fishing creek and the Western Branch, thence north joining on Thomas Norcutt's line to an oak tree" and the line described in the Norcutt grant as "beginning at the mouth of a small gut and so running N. 160 poles joining to the lands of James Harris," plainly designated the same boundary line. The chain

of title to the Westland property shows that James Harris was the owner of that property in 1665 by conveyances following the Towers patent, and was therefore a predecessor in title to Gibbs, and the owner of the land adjoining Norcutt's grant on the west. Considering the two descriptions together, it follows that the Fishing creek was the name by which the present gut or creek was designated and that the dividing line between the two properties at that time ran from a pine on the eastern side of the creek, near or at its junction with the Western Branch, north-wardly in a line apparently straight for a distance of 160 poles, or 2,640 feet, a pole being the equivalent of sixteen and one-half feet. A title examiner of long experience testified in the case at considerable length, after an exhaustive study of the deeds in the chains of title of both parties, and of the lines and descriptions given in early conveyances of adjoining and neighboring parcels of land. He reaches the conclusion just stated, and we think he is correct. The dividing line, established in the judgment of the trial court, commencing at the public road runs south seven degrees east 1,930 feet to a point near the head of the marsh, thence on the same course 466 feet to a point marked by a stake in the marsh; the boundary line thus far is partly a ditch dividing the properties and is not disputed. From the last mentioned point marked by the stake in the marsh the line continues south five degrees west 517 feet to a point on high land marked by a stake within a few feet of the waters of the Western Branch, and then on the same course to the branch. The last mentioned point on high land on the eastern side of the creek was fixed as approximately the position of the pine tree between the creek and the branch, mentioned in the Gibbs deed in 1723 as the point from

which the line ran north.   Judge C. W. Coleman testi-
fied that he went to reside in Norfolk county early in
eighties and had known John T. Griffin and the Griffin
property for forty years; that John T. Griffin died in
1920, and he proved the title of the petitioners as his
heirs, and gave some testimony as to the identity of
the property conveyed to Griffin in 1871 with descrip-
tions in earlier deeds.   It also appeared in evidence that
John S. Wright, who purchased Sunnyside in 1846 and
conveyed it to Wm. F. Wise, had noted that a scrubby
oak near to and east of a cove and near to and north
of the Western Branch was the marked line tree on the
western boundary of his land and on the dividing line
between his land and the land of Griffin.   It further
appears that this John S. Wright and John Love were
appointed processioners of land in Norfolk county and
they again marked the oak tree "as a line tree on the
dividing line between the two said farms," alluding to
Sunnyside and Griffins.   John S. Wright, Jr., son of
J. S. Wright, owner of Sunnyside farm from 1846 till
1878, when he conveyed it to Wm. F. Wise, testified
that he was born in 1857 and lived on the farm with
his father until December 1878.   He testified that his
father had pointed out to him a small oak tree standing
on high ground to the east of the marsh not far from
the Western Branch as the last monument on the line
before it reached the water; that he had recently gone
out to the farm and he was able to reasonably locate
the position of the oak tree, which was standing when
he left the farm in 1878, but had since disappeared, and
the surveyor's stake was placed approximately at that
spot.

 Without further detailing the evidence, we are
satisfied that the trial judge correctly deduced, from
the documentary evidence and all the oral testimony

supplementing it, that this oak tree occupied the same position upon which stood the pine mentioned in the deed from Gibbs to Morshead in 1723, and that the line in the petitioners' plat running from a point in the marsh 517 feet south five degrees west to this spot established by the trial court as on the disputed boundary was the only reasonable settlement of the controversy between the parties, which would be made.

██ The burden is on the plaintiff in error to satisfy the appellate court of error in the decision of the trial court. This has not been done. The judgment of the lower court is presumed to be right. *Kiser* v. *Hannah*, 148 Va. 594, 139 S. E. 279; *White* v. *Reed*, 146 Va. 246, 135 S. E. 809.

██ It is claimed by the plaintiff in error that title to the small piece of arable land to the west of the established line has been acquired by adverse possession. There is some evidence showing that occupants of the Sunnyside farm from time to time have, in the course of their crop raising, cultivated beyond the line of the oak tree to the west. The burden of establishing adverse possession was upon the plaintiff in error, as defendant on the trial. The evidence does not establish that either party intended, until in recent years, to claim otherwise than up to the true line. In Virginia the possession, claimed to be adverse, must have been hostile, and the intention to hold adversely is an indispensable element of adversary possession. See *Sims* v. *Capper*, 133 Va. 278, 112 S. E. 676; *Radford Veneer Corporation* v. *Jones*, 143 Va. 124, 129 S. E. 260; *Stuart* v. *Meade*, 119 Va. 753, 89 S. E. 866; *Christian* v. *Bulbeck*, 120 Va. 74, 90 S. E. 661; *Schaubuch* v. *Dillemuth*, 108 Va. 86, 60 S. E. 745, 15 Ann. Cas. 825.

We think it quite clear that the defendant has not shown an adverse possession which ripened into a good title.

On the whole case we find no error in the judgment of the trial court, and it is therefore affirmed.

*Judgment affirmed.*