# Richmond

MYRTLE KIRBY ALLEN v. WILLIAM, F. POWERS and Others.

March 9, 1953.

Record No. 4027.

Present, Hudgins, C. J., and Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Hunton, Williams, Anderson, Gay and Moore, T. Justin Moore, Francis V. Lowden, Jr., J. Maurice Miller, Jr., Catesby G. Jones,* for plaintiff in error.

*W. M. Minter, George P. DeHardit,* for defendants in error.

WHITTLE, J., delivered the opinion of the court.

Myrtle Kirby Allen filed a petition in the Circuit Court of Gloucester County on August 4, 1951, for the purpose of establishing the boundary line between her land and the contiguous land owned by William F. Powers and others. The petition was filed pursuant to section 8-836, Code of Virginia, 1950.

Mrs. Allen alleges that the line sought to be established is the northern line of her property and the southern line of the land "owned by William F. Powers and U. P. Powers, his wife, for their joint lives, then to the survivor for life, with the remainder to William Malvern Powers."

Admittedly, the common source of title to both parcels of land is Ellen Evans.

On May 5, 1906, W. H. Groves acquired the land now owned by Mrs. Allen, and hereinafter referred to as the "Manse" property, from Ellen Evans and John T. Evans, her husband. The land in dispute is included in this conveyance. At the time of the sale this and other adjoining land was surveyed by the county surveyor. The surveyor's plat purports to show the boundary between the land thus sold to Groves and the land retained by Ellen Evans. It is this line which Mrs. Allen claims is the true boundary.

William M. Powers acquired title to the land retained by Ellen Evans by deed dated September 13, 1915. On the 21st day of January, 1922, he conveyed a life estate in the property to William F. Powers and U. P. Powers, his father and mother. At the time of the purchase John T. Evans pointed out to the appellees the boundary between the two tracts, but along a different line from that indicated on the plat. However, the controversy between the parties in regard to this discrepancy is of little consequence as will be hereafter shown. The determinative issue between the parties arises from the following facts:

By deed dated July 3, 1919, the trustees of the First Presbyterian Church of Gloucester acquired title to the "Manse" property from Mary W. Groves, successor in title to W. H. Groves. At the time the church purchased this property the Reverend Thomas Boyer Ruff was the minister in charge, and was given authority by the church trustees to erect a manse

thereon. It developed in the course of construction that the road to the manse site was inaccessible and it became necessary to change the roadway and cross a portion of the property belonging to appellees (Powers). A verbal trade was made between the Powers and the Rev. Ruff whereby they agreed to exchange with the First Presbyterian Church the land traversed by the new road for a small part of the "Manse" property bordering on Johns Cove, the boundary of which included the two disputed lines above referred to. According to the testimony of both Powers and the Rev. Ruff this trade was made in good faith but through the admitted neglect of the Rev. Ruff the legal steps necessary to perfect the exchange were never taken.

The facts surrounding the trade are not controverted, and it is admitted that the owners of the "Manse" property have continuously used the roadway and have thus exercised dominion over the land across which it runs.

In their grounds of defense the Powers recite the agreement and allege that since the date thereof they have "had the actual, exclusive, hostile, open and notorious possession," and have claimed ownership of the land traded to them; "that said line was recognized and accepted by plaintiff's (Mrs. Allen's) predecessors in title as the true boundary line between the land of plaintiff and the land of the defendants." They thus contend that they have acquired title to this land either by adverse possession or by estoppel.

Mrs. Allen moved the court to strike the grounds of defense pertaining to adverse possession and estoppel in so far as the defenses applied to the land embraced in the trade. The motion was based upon the theory that possession of this land could not have been adverse as it was held under and by virtue of the oral agreement. Mrs. Allen also objected to the court instructing the jury as to adverse possession and estoppel with reference to the land claimed under the agreement. The motion to strike the defenses was overruled and instructions dealing with adverse possession and estoppel were given, to which rulings exceptions were duly noted.

The jury returned its verdict on December 3, 1951, fixing the boundary line so as to include in the Powers tract the land traded to them under the oral agreement. Mrs. Allen moved the court to set the verdict aside, contending that the case had been tried upon the wrong theory; that as appellees were claiming the land

in dispute under the agreement with Rev. Ruff, the possession of same was not adverse and hence the defense of adverse possession was not appropriate, and that under the related circumstances the defense of estoppel was not proper.

The court overruled appellant's motion to set the verdict aside, and over her objection and exception judgment was entered thereon, to which we granted a writ of error.

Mrs. Allen lists several assignments of error, all of which generally point up one question for decision, *i.e.,* whether under the facts and circumstances of the case the defenses of adverse possession and estoppel are appropriate.

The record discloses that the Rev. Ruff lived in the manse from its completion about 1919 until he relinquished his charge and moved away in 1925. During that time the title to the "Manse" property was in the First Presbyterian Church of Gloucester; after the oral agreement the appellees (Powers) took possession of the property embraced in the trade, fenced the same, and have since used it exclusively as their own. In fact, Mrs. Allen admits in her brief that "since the trade appellees have been in possession of the entire point (the land claimed), and, according to the testimony, claimed ownership and were in possession (but) solely by virtue of the trade."

Appellant contends that in such a situation a vendee cannot be said to hold adversely to his vendor. In support of this she cites the case of *Chapman* v. *Chapman,* 91 Va. 397, 399, 400, 21 S. E. 813. This is the general rule to which we have subscribed in cases where possession remains in privity with and subservient to the legal title of the vendor. In such case a vendee is not permitted to impeach or assail the title of his vendor. This rests upon the theory that where one claims under the holder of the legal title a privity exists which precludes the idea of a hostile, tortious possession which will silently ripen into a title by adverse possession, unless the vendee has asserted an adverse right, and has openly and continuously disclaimed the title of his vendor and brought the knowledge of the disclaimer clearly home to him. *Williams* v. *Snidow* (1832), 4 Leigh (31 Va.) 14; *Clarke* v. *McClure,* (1853) 10 Gratt. (51 Va.) 305; *Alleghany County* v. *Parrish,* (1896) 93 Va. 615, 25 S. E. 882; *Creekmur* v. *Creekmur,* 75 Va. 430; *Whitlock* v. *Johnson,* 87 Va. 323, 327, 12 S. E. 614; *Marbach* v. *Holmes,* 105 Va. 178, 180, 52 S. E. 828. See also Annotation, 1 A. L. R., p. 1330.

This holding would apply had the title to the ''Manse'' property remained in the First Presbyterian Church of Gloucester. But such is not a fact. The record discloses that by deed dated May 16, 1930, the trustees of the church, under authority of the Circuit Court of Gloucester County, conveyed the property jointly to Severn Presbyterian Church at Naxera and Groves Memorial Presbyterian Church at Glass, and on March 9, 1944, the trustees of the Severn Church and the trustees of Groves Memorial, acting under authority of an order entered in the Circuit Court of Gloucester County, conveyed the property to the Presbyterian League of Norfolk Presbytery, Inc., which corporation in turn conveyed it to Mrs. Allen on December 8, 1950.

Appellees contend that this case is controlled by our holding in *Marion Investment Co.* v. *Va. Lincoln Furniture Corp.*, 171 Va. 170, 198 S. E. 508. With this we agree. In the *Marion Investment Company* case the disputed property was sold at a judicial sale under a deed of trust placed thereon by a railroad company, the owner thereof, the purchase price was paid and possession was taken by the purchaser, but no deed was delivered until ten years later, after which Marion Investment Company acquired title to the land. Prior to the foreclosure an agreement had been made between the furniture company's predecessor in title and the railroad company, that if the furniture company's predecessor would move a depot from the disputed land then the railroad company would deed the lot to defendant furniture company's predecessor in title. The depot was removed, but the railroad company failed to excute the deed, although the furniture company's predecessor took possession and graded and improved the lot. The investment company conceded that the furniture company's possession was open, notorious exclusive, continuous and uninterrupted for the statutory period, but insisted that such possession, starting under the parol agreement with the railroad company, was permissive and not hostile. We there held that when the purchaser at the judicial sale under which the deed of trust was foreclosed paid the purchase price and the sale was confirmed it then became entitled to a deed, all interest of the railroad company terminated, and therefore the furniture company's predecessor in title did not hold under the railroad company, hence the hold-

ing was adverse and hostile to the rights of the purchasers at the judicial sale.

In the instant case the appellees have been in possession of the land here in dispute, since the verbal trade made with the Rev. Ruff in 1919. It is not denied that they fenced the property in that year and have had open, notorious, exclusive, continuous uninterrupted possession of the land to this date. When the First Presbyterian Church of Gloucester deeded the property to Severn and Groves Memorial churches in 1930, all interest it had in the property terminated, and since that time appellees have not been holding under it. Hence, appellees' holding since 1930 has been adverse and hostile to the rights of Severn and Groves Memorial Presbyterian churches and to the corporation which acquired title to the property from those two churches in 1944.

When Mrs. Allen purchased this property from the Presbyterian League of Norfolk in 1950, she was informed of the dispute. The property had been sold to Mrs. Allen for $15,000, and she was given a rebate of $500 on the purchase price. Mrs. Allen's husband, who negotiated the trade, explains the rebate as follows: "That reduction was made simply because the committee we met with in Norfolk stated that the line was in dispute * * * that they recognized a dispute, or there was a dispute and of the Presbyterian churches reluctance to go into court. They felt it was no place for a church to be, except to defend itself, and they gave me $500 to go into court."

██ Appellant contends that the *Marion Investment Company* case does not apply. She argues that this case "simply held that there was no privity between one claiming under a previous owner and a purchaser of the lands at a judicial sale. The holding was expressly limited to such facts * * *." With this we cannot agree. We can see no reason to differentiate between a purchaser at a judicial sale and any other purchaser.

In this instance the property was sold by the First Presbyterian Church of Gloucester to Severn and Groves Memorial churches in 1930, under a judicial proceeding authorized by § 57-15 of the Code. This section required the church trustees to file suit asking the court's permission for them to make the sale; evidence showing that it was the wish of the congregation to sell was required to be produced, and an order of the court was

necessary before legal title to the church property could pass to the purchasers.

Appellant states in her brief: "Even if it be assumed that (the Marion Investment Co. case) stands for the proposition as claimed by appellees, they still cannot prevail." In her argument appellant asserts that the First Presbyterian Church, Groves Memorial Presbyterian Church and Severn Presbyterian Church were at the time of the trade one religious unit, and "thereafter in 1930 the transfer, on which appellees rely to bring themselves within the rule they claim, was from one part of this religious unit to another (and) such a transfer did not destroy the privity between appellees and the latter two churches."

Even if the argument thus made were sound, which we do not decide, we cannot find that the record contains the facts upon which the conclusion is based. The First Presbyterian Church, Severn Presbyterian Church and Groves Memorial Presbyterian Church each had separate trustees, duly appointed by the Circuit Court of Gloucester County to hold title to the respective property owned by each church.

The First Presbyterian Church acquired title to the "Manse" property on July 3, 1919, as heretofore detailed. On May 16, 1930, the trustees of this church conveyed the property to the trustees of Severn and Groves Memorial churches jointly, and thus any privity existing between appellees (the Powers) and the First Presbyterian Church, with whom the oral agreement was made, was broken, and since this date (1930) appellees' possesssion of the disputed land has necessarily been hostile and adverse to Severn and Groves Memorial churches as well as to the Presbyterian League of Norfolk which acquired title to the property in 1944.

Appellant next asserts that as late as 1937 appellees were claiming under Groves Memorial Presbyterian Church and Severn Presbyterian Church and thus they were not holding adversely to these churches. The basis for this claim is that appellees approached the trustees of these two churches in an effort to have them perfect appellees' title *in pais* to the land covered by the trade. The trustees of these churches knew of the trade, and knew that appellees were claiming the land and were in possession of it; they also knew that they (the trustees) were in possession of the land traversed by the roadway leading to

the "Manse" property. Certainly appellees could not at that time require the First Presbyterian Church to perfect their title to the disputed land for this church had conveyed the property and no longer held title to it. In this instance appellees were not claiming under these churches, but rather were asserting their rights, maintaining that their possession of the land was hostile to the title of the churches, and endeavoring to perfect their title which had not then been matured by their possession.

There is an assignment of error dealing with leading questions asked by the attorney for appellees in regard to the disputed dividing lines between these properties. As these two lines are both included in the land embraced in the jury's verdict this assignment becomes moot.

Error was assigned to two instructions given on behalf of the appellees, one dealing with adverse possession (instruction E), with which we find no fault; the other (instruction C), included the defense of estoppel. It was error to give this instruction. A proceeding under Code, § 8-836, to establish a disputed boundary line, is tried according to the principles applicable to an action of ejectment. *Prettyman* v. *Duer & Co.*, 189 Va. 122, 136, 52 S. E. 2d 156, 163. An equitable estoppel cannot be pleaded or proven in ejectment. Burks Pleading and Practice, 3rd Ed., § 118, page 224; *Haney* v. *Breeden*, 100 Va. 781, 782, 783, 42 S. E. 916; *Wade* v. *Ford*, 193 Va. 279, 283, 68 S. E. 2d 528.

While, as stated, this instruction should not have been given under the record in this case, the error was harmless.

The proof of adverse possession has been established by evidence so strong and conclusive that no other result can here be reached.

For the reasons stated, the judgment of the trial court is

*Affirmed.*