# Richmond

## H. D. Gillespie v. Porter N. Hawks and Faith Knight.

January 17, 1966.

Record No. 6110.

Present, All the Justices.

*A. E. Cooley*, for the appellant.

No brief filed or argument for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

H. D. Gillespie filed a bill in the court below against Porter N. Hawks and Faith Knight, alleging that he is the fee simple owner of a five-acre tract of land in Carroll county; that he acquired one-half interest therein from the heirs of G. H. Stantliff by a deed dated October 16, 1961, and the other one-half interest from Oleman Carlan and wife by a deed dated December 18, 1956; and that Carlan had acquired the land from W. A. Hawks and wife by a deed dated August 26, 1909. The bill further alleged that the defendants had become the owners of a tract of land by deed from J. L. Tompkins, commissioner, dated July 3, 1950; that the land of the defendants surrounds the five-acre tract owned by the plaintiff; that he, the plaintiff, had requested the defendants to grant him a right of way from his land across their land leading to the public road, and that they had refused to do so.

The prayer of the bill was that in accordance with Code, § 8-836 (Repl. Vol. 1957), the court ascertain the location and true boundary line between the property of the plaintiff and that of the defendants and "designate a right of way" leading from the plaintiff's land across that of the defendants to the public road.

The defendants filed a plea and answer alleging that from the time of the deed by which W. A. Hawks conveyed the property to Carlan in 1909 until his death in 1941, Hawks had had exclusive, notorious and hostile possession of the land; that Hawks' heirs had had similar exclusive, notorious and hostile possession from the date of the death of Hawks until the present time, and that accordingly the plaintiff's claim of title to the land had been barred by the statute of limitations. Code, § 8-5 (Repl. Vol. 1957).

The answer also alleged that the deed from Hawks to Carlan was "fictitious, had conferred no title" in Carlan, and that the latter had never claimed any title to, or interest in, the property by virtue of the deed or otherwise. Moreover, the answer alleged, the description in the deed was "inadequate to pass title" to the property.

The lower court referred the matter to a commissioner to report on the questions raised in the pleadings. The commissioner reported that W. A. Hawks "had been in notorious and hostile possession of the piece of land in question" from the date of his deed to Carlan in 1909 until the date of his (Hawks') death in 1941, and that, therefore, the defendants' plea of the statute of limitations under § 8-5 should be sustained.

The commissioner further held that the description in the deed from Hawks to Carlan was "sufficient to convey title." From a decree overruling the plaintiff's exceptions to the report, sustaining the defendants' plea of the statute of limitations and dismissing the bill, the plaintiff has appealed.

In his assignments of error the plaintiff claims that the lower court erred in confirming the commissioner's report which held that the plaintiff's title to, and interest in, the property was barred by the statute of limitations through the adverse possession of Hawks.

There is no assignment of cross error to the finding of the commissioner, confirmed by the lower court, that the description in the deed from Hawks to Carlan was sufficient to convey title. Hence, it is not necessary that we consider that matter.

■ The defendant's contention that the deed from Hawks to Carlan was "fictitious" and "conferred no title" to the property was not settled by the commissioner's report or the decree confirming it. We find that it is entirely without merit.

The basis for this claim is the testimony of the defendant, Porter N. Hawks, who was a son of W. A. Hawks. This witness testified that because of a rumor that "a little old still" was located on the property, his father feared that the land might be confiscated and determined to get rid of it. Consequently, he conveyed it to Carlan, his son-in-law, who, the witness said, had deserted his wife and children and was an irresponsible person.

Porter N. Hawks further testified that at the time the deed was executed he paid his father, the grantor, $50 for the property and represented to the justice of the peace who wrote the deed and took the acknowledgments of the grantors therein, that he, Porter N. Hawks, was Oleman Carlan, the intended grantee.

Assuming this testimony to be true, it does not establish the contention that the deed was fictitious and insufficient to pass title to the property. The alleged desire of the grantor to be rid of the property and his motive therefor confirmed rather than disproved the validity of the conveyance.

Again, the fact that this witness falsely represented to the scrivener of the deed that he was the intended grantee did not affect the validity of the instrument. This witness admitted on cross-examination that his father, the grantor, was not deceived by this misrepresentation.

■ The only question before us, then, is whether the lower court erred in confirming the commissioner's report which held that the

plaintiff's claim to the land was barred by the statute of limitations. We hold that it erred in this respect.

It is undisputed that the allegations in the bill correctly state the record titles of the parties to the respective properties. The defendants, Hawks and Knight, acquired their property from J. L. Tompkins, commissioner, in a suit brought to settle the estate of W. A. Hawks. The surveyor who surveyed the Hawks property for the purpose of that suit testified that the plat prepared by him shows that the five-acre tract here in controversy was not included in the property conveyed by the commissioner to the defendants but adjoined it. Indeed, the defendants do not claim record title to this five-acre tract. They claim title thereto through the adverse possession of W. A. Hawks for more than the statutory period of fifteen years. Code, § 8-5.*

The record shows that after W. A. Hawks conveyed the property to Carlan in 1909, he (Hawks) remained in possession and used it as a part of the land owned by him. There is evidence that he used a spring on the property and cultivated a garden there. This situation continued until Hawks' death in 1941. In the meantime Carlan paid no taxes on the land or ever went on it.

Carlan and wife conveyed the property to the plaintiff and G. H. Stantliff in 1956. In 1961 the plaintiff acquired the Stantliff interest. Shortly thereafter he demanded of Porter N. Hawks a right of way to the public road which was refused. This was the first time that the plaintiff's title to the property had been questioned.

The holding of the commissioner and the lower court that the plaintiff's claim of title to the five-acre tract is barred by the statute of limitations is predicated upon the finding that the possession by the grantor, W. A. Hawks, was adverse to his grantee, Oleman Carlan.

Ordinarily, where a grantor continues in possession of the land after the execution and delivery of the deed, his possession will be regarded as holding the premises in subserviency to the grantee, as his tenant or as trustee for him. However, this presumption is rebuttable and under proper circumstances a grantor may by adverse possession acquire title to land which he has conveyed. 3 Am. Jur.

---

*Code, § 8-5, as amended by Acts of 1954, ch. 604, p. 780, provides:

"No person shall make an entry on, or bring an action to recover, any land but within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to himself or to some person through whom he claims."

2d, Adverse Possession, § 163, p. 245; *Id.*, § 164, p. 246; 2 C. J. S., Adverse Possession, § 95 a., pp. 652, 653.

"* * * In order to make the plea of limitation effectual in a case where the grantor remanis in possession, using the land as he did before his deed, he must show some notorious act of ownership over the property, distinctly hostile to the claim of the grantee. The hostility of the grantor's holding must be brought to the grantee's attention in such a manner as to put the latter on notice of the grantor's intention to occupy the property in his own right." 3 Am. Jur. 2d, Adverse Possession, § 164, pp. 246, 247. See also, 2 C. J. S., Adverse Possession, § 95 c., pp. 653, 654.

These principles are firmly fixed in this jurisdiction. In *Schaubuch v. Dillemuth*, 108 Va. 86, 88, 60 S. E. 745, 15 Ann. Cas. 825, we said: " * * * [O]ur own decisions, from an early period, and the weight of authority, hold that his [the grantor's] possession is in subserviency to the grantee, and that a clear, positive, and continued disclaimer and disavowal of such relation, and the assertion of an adverse right, brought home to the knowledge of the true owner, are indispensable to change the character of the grantor's possession and render it adverse to the grantee." See also, *Chapman* v. *Chapman*, 91 Va. 397, 399, 400, 21 S. E. 813, 50 Am. St. Rep. 846; *Allen* v. *Powers*, 194 Va. 662, 665, 74 S. E. 2d 688, 690; Minor on Real Property, 2d Ed., Vol. 2, § 963, pp. 1229, 1230.

The mere fact that the grantor remains in possession, using the property as before conveyance, is not sufficient in itself to bind the grantee with notice that the grantor is holding adversely to him. 2 C. J. S., Adverse Possession, § 95 c., p. 654.

Here the burden was on the defendants to prove that the possession by W. A. Hawks was adverse to his grantee, Carlan. 3 Am. Jur. 2d, Adverse Possession, § 248, pp. 345, 346; 2 C. J. S., Adverse Possession, § 214 a., p. 814 *ff.; Westland Realty Corp.* v. *Griffin*, 151 Va. 1005, 1016, 145 S. E. 718; *Matthews* v. *W. T. Freeman Co.*, 191 Va. 385, 395, 60 S. E. 2d 909, 914; *Leake* v. *Richardson*, 199 Va. 967, 976, 103 S. E. 2d 227, 234.

This burden the defendants failed to carry. The evidence merely shows that W. A. Hawks remained in possession of the property and used it as before the conveyance. There is no evidence that he did or said anything to indicate to Carlan that his holding of the property was adverse or hostile to him. There is no showing that Hawks

disclaimed the deed or disavowed Carlan's ownership of the land. Thus the evidence fails to show that subsequent to the conveyance Hawks' possession was hostile and adverse to his grantee, Carlan. Consequently, the lower court erred in confirming the report of the commissioner which held that the plaintiff's title to the property was barred by adverse possession.

The decree appealed from is reversed and the cause remanded to the lower court for further proceedings in conformity with this opinion.

*Reversed and remanded.*