730 P.2d 281

**ZIGGY'S OPPORTUNITIES, INC., an Arizona corporation, Plaintiff, Appellee, Cross-Appellant,**

v.

**I–10 INDUSTRIAL PARK DEVELOP-ERS, an Arizona general partnership; Mardian Development Company, an Arizona corporation; Paramount Development Associates, Inc., a Massachusetts corporation; Transamerica Title Insurance Company, a California corporation, Defendants, Cross-Defendants, Appellants, Cross-Appellees,**

**State of Arizona ex rel. W.A. Ordway, Director, Department of Transportation, Defendant, Cross-Claimant; Appellee.**

**No. 1 CA–CIV 8086.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 16, 1986.

Reconsideration Denied Nov. 4, 1986.

Streich, Lang, Weeks & Cardon, P.A. by Dan M. Durrant, William S. Hawgood II and Peter W. Sorensen, Phoenix, for plaintiff, appellee, cross-appellant.

Snell & Wilmer by Daniel J. McAuliffe and Susan G. Wintermute, Phoenix, for defendants, cross-defendants, appellants, cross-appellees.

Robert K. Corbin, Atty. Gen. by Samuel Ruiz, Asst. Atty. Gen., for defendant, cross-claimant, appellee.

## OPINION

CORCORAN, Judge.

In this appeal we consider whether a grantor of land can adversely possess the land he conveyed against his grantee. We conclude that he cannot.

### 1. *Facts*

The property in dispute is a narrow strip of land between two parcels, located near 51st Avenue and McDowell Road in Phoenix. At the time this lawsuit was initiated, the northern parcel was owned by Ziggy's Opportunities, Inc. (Ziggy's) and the south-

ern parcel was owned by I–10 Industrial Park Developers (I–10). The two parcels are roughly divided by a dirt road, cement irrigation ditch, and old fence lines. The roadway, cement ditch, and fence lines were constructed at a time when both the northern and southern parcels were one property. It is not disputed that according to the legal description of record title, the northern boundary of the southern parcel is north of the dirt road and cement ditch.

The chain of title and possession of these two properties is determinative of the outcome of this appeal. Before October 1970, Rubenstein Construction Co. (Rubenstein) owned both parcels as one property. In October 1970, Rubenstein sold the southern parcel to Kaiser-Aetna, which in turn sold the property in June 1979, to I–10. Rubenstein retained ownership of the northern parcel remainder until February 1978, when it was sold to Great American. In April 1979, Great American sold the northern parcel to Canstar, Ltd., which in turn sold the parcel to Ziggy's in May 1980.

In August 1981, the State of Arizona instituted an eminent domain proceeding against I–10 for the acquisition of land that included the whole property in dispute. An order of immediate possession (A.R.S. § 12–1116) was entered in October 1981, and a final order of condemnation (A.R.S. § 12–1126) was entered pursuant to stipulation between the State and I–10 in July 1982.

Throughout the 1970's and early 1980's, the northern and southern parcels were cultivated by farmers. Don Wiechens leased *both* parcels from Rubenstein for farming for several years. After the conveyance of the southern parcel to Kaiser-Aetna in October 1970, Wiechens continued to farm *both* parcels in exactly the same manner under two separate leases. In 1973 Bruce Brooks took over *both* leases. Brooks farmed the northern parcel until 1982 and the southern parcel from 1973 through the end of 1979. In 1980, the southern parcel was leased and farmed by Tom Tait.

In recent years, the properties in question have been surveyed twice. The surveyors disagree as to the appropriate placement of the boundary between the two parcels because the surveyors use different methods to survey the properties. The disputed survey lines are roughly parallel and are 27 feet apart; both are north of the dirt road. The issue of the surveys was not resolved by the trial court since it was subsumed in the judgment relating to adverse possession.

In June 1982, almost a year after the eminent domain proceeding was initiated, Ziggy's brought a quiet title action as to the property north of the roadway on the grounds that (1) pursuant to A.R.S. § 12–526, it had acquired adverse possession by use and cultivation of the land for 10 years; and alternatively, that (2) pursuant to A.R.S. § 12–523, it had acquired title by adverse possession by color of title for 3 years to the 27–foot wide strip located between the two disputed survey lines. After trial to the court, the trial court granted fee simple title to Ziggy's for a portion of the land it requested. Specifically, the judgment awarded Ziggy's that part of the property north of the roadway that Ziggy's tenant and his predecessors had cultivated. The court also awarded the State judgment against I–10 in the amount of $81,012.59 on its action for "money had and received." The award to the State represents the sum previously paid to I–10 for the condemnation of land which the court awarded Ziggy's in this quiet title action.

I–10 appeals the court's judgment and award granting title by adverse possession to Ziggy's and the monetary judgment in favor of the State. Ziggy's cross-appeals the trial court's refusal to award it title by adverse possession to the remaining disputed areas: the area known as the dairy farm, and the land between the cement ditch and the cultivated fields of the northern parcel.

Since neither party requested the trial court to make findings of fact and conclusions of law, *see* Rule 52(a), Arizona Rules of Civil Procedure, this court on appeal

must presume that the trial court found every fact necessary to support the judgment. The judgment must be sustained if the evidence on any reasonable construction justifies it. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977). We have reviewed the facts in a light most favorable to support the judgment but reverse because, as a matter of law, Ziggy's has failed to prove all the requisite elements of adverse possession. *See Whittemore v. Amator,* 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986).

### 2. Effect of Condemnation Proceedings On Claim of Adverse Possession

Before we consider whether or not Ziggy's adversely possessed the disputed property for 10 years, we must determine the appropriate time frame in which a claim for adverse possession could be maintained.

I–10 argues that the only possible term of adverse possession is a span of 11 years, from October 1970 (when the southern parcel was sold by Rubenstein to Kaiser-Aetna) to October 16, 1981 (when the order of immediate possession was entered). According to I–10, the order of immediate possession divested them of their right to use the property or sue for ejectment, and therefore terminated the period of adverse possession.

Ziggy's contends that the relevant period of time extends until December 1982, when the State actually entered into possession of the land—a span of approximately 12 years. Ziggy's maintains that the order of immediate possession is merely a preliminary step giving the State permission to enter and does not affect the maintenance of a claim for adverse possession.

■ We agree with I–10. The order of immediate possession divested I–10 of the right to use and possess the property described in the order. *Tucson Airport Auth. v. Freilich,* 136 Ariz. 280, 665 P.2d 1002 (1983); *Gardiner v. Henderson,* 103 Ariz. 420, 443 P.2d 416 (1968). The right of the State to possess the property as of October 16, 1981 barred I–10 from suing Ziggy's for ejectment. Ejectment is a possessory action in which the basis of the cause of action is the plaintiff's right of immediate possession. *Snyder v. Betsch,* 56 Ariz. 508, 109 P.2d 613 (1941); *Hulsebus v. McConnell,* 46 Ariz. 371, 51 P.2d 259 (1935). Absent the right to possess the property, one cannot sue for ejectment. *See* A.R.S. § 12–1251. Under A.R.S. § 12–526, the statute of limitations can only run against "[a] person who has a cause of action for recovery of any lands." Since I–10's right to recover the land via an action for ejectment ended on October 16, 1981, Ziggy's adverse possession against I–10 necessarily terminated on that day.

■ Ziggy's could not continue its adverse possession of the land against I–10's successor, the State, because adverse possession cannot run against the State. *Bigler v. Graham County,* 128 Ariz. 474, 626 P.2d 1106 (App.1981). Thus, the only period of time in which a claim for adverse possession could lie is between October 1970 and October 16, 1981.

### 3. Adverse Possession by Grantor

■ The elements of adverse possession are an actual and visible appropriation of land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another for a period of 10 years. A.R.S. §§ 12–521, 12–526; *see Ellingson v. Fuller,* 20 Ariz.App. 456, 458, 513 P.2d 1339, 1341 (1973). The burden of proof in a claim for title by adverse possession is upon the person claiming title to show that the requisite statutory elements have been satisfied. *Tenney v. Luplow,* 103 Ariz. 363, 442 P.2d 107 (1968); *Conwell v. Allen,* 21 Ariz.App. 383, 519 P.2d 872 (1974).

Under A.R.S. § 12–526 an adverse possessor must take possession of the property for a period of 10 years before his possession can ripen into fee title to the land. I–10 argues that Ziggy's is unable to meet this requisite period because Ziggy's cannot "tack" or rely on that period of time from 1970 to February 1978, the time when Rubenstein owned the northern parcel, on the theory that a grantor, such as Rubenstein, cannot adversely possess against his

grantee, in this case Kaiser-Aetna, unless he provides the grantee with express notice of an adverse claim. We agree.

■ As a general rule, a grantor cannot adversely possess against his grantee. Upon execution and delivery of the deed, the grantor's legal title to the property conveyed passes to the grantee, and his possession thereafter is presumed to be subservient to the rights of his grantee. *Rise v. Steckel,* 59 Or.App. 675, 652 P.2d 364 (1982); *Gillespie v. Hawks,* 206 Va. 705, 146 S.E.2d 211 (1966); *Green v. Vance,* 311 S.W.2d 738 (Tex.Civ.App.1958). This presumption is rebuttable and may be overcome where it is shown that the grantor's continued possession is entirely inconsistent with the rights of his grantee, or his possession is accompanied by an express disclaimer of the relationship, a notorious assertion of right, an unequivocal act of hostility, and actual notice. *See Gillespie v. Hawks, supra; Green v. Vance, supra; Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174 (1955); Annot., *Grantor's Possession as Adverse Against Grantee,* 39 A.L.R.2d 353 (1955); 2 C.J.S. *Adverse Possession* § 133 (1972).

■ Ziggy's claims adverse possession by use and cultivation from October 1970 until December 1982—when the State actively entered into possession of the land. Since Ziggy's did not purchase the property until May 1980, it must necessarily rely on, or tack, the adverse possession of its predecessors in order to establish a continuous possession. *See Cheatham v. Vanderwey,* 18 Ariz.App. 35, 499 P.2d 986 (1972). Ziggy's has failed to prove that Rubenstein, the original owner of the northern and southern parcels, adversely possessed the property against its grantee Kaiser-Aetna (a predecessor to I–10) between October 1970 and February 1978. Ziggy's failed to present any evidence showing that Rubenstein gave notice of adverse possession sufficient to rebut the presumption that a grantor cannot adversely possess against its grantee. Therefore, Ziggy's could only have adversely possessed the land for a period of 3½ years, from February 1978 to October 1981—6½ years less than the requisite period.

## 4. *Adverse Possession by Common Tenant*

The only evidence presented by Ziggy's relevant to the issue of adversity was the testimony of the tenant-farmer Brooks. Brooks testified that he farmed both the northern and southern parcels under two separate leases from 1973 until 1979. It was his "understanding" that the lease from Rubenstein (and later Ziggy's) encompassed all property down to the dirt road, which included the strip in dispute. However, Brooks did not convey this understanding to either of his lessors.

The lease between I–10 and Brooks would have given Brooks permission to farm the disputed property for I–10, and thus I–10 would not have had notice of an adverse claim through Brooks' use of the land north of the dirt road. The first time I–10 would have had notice of an adverse claim to the disputed strip was January 1980 when Tait took over the lease to the southern parcel and farmed only south of the irrigation ditch, while Brooks continued to farm the northern parcel *and* the strip in dispute.

■ Hostility, a necessary element of adverse possession, cannot be evidenced by a common tenant who possesses both parcels in the same manner after the sale as before. It is presumed that a tenant does not hold adversely to his landlord. *See Spillsbury v. School Dist.,* 37 Ariz. 43, 288 P. 1027 (1930); 3 Am.Jur.2d *Adverse Possession* § 166 at 250 (1962). No evidence was presented indicating that Brooks was adversely possessing the disputed parcel on behalf of Ziggy's or that he gave notice to that effect to I–10. Thus, I–10 would not have had notice that Brooks was farming the property adversely to his lease with I–10.

■ Ziggy's alternative claim of adverse possession for 3 years under color of title pursuant to A.R.S. § 12–523 must also fail because the statute of limitations on this claim did not begin to run until January 1980. As previously discussed, absent notice of hostile intent from Rubenstein to

Kaiser-Aetna, Rubenstein's possession cannot be considered adverse and cannot be relied on by Ziggy's to show adverse possession. Therefore, Ziggy's, as a matter of law, cannot claim the existence of adverse possession of the disputed property before February 1978. Further, Ziggy's cannot rely on that time in which both parcels were leased by a common tenant. The record does not show any adversity, aside from that claimed during the common tenancy, until January 1980. Thus, Ziggy's could only have adversely possessed the property between January 1980 and October 1981—a period of only 1¾ years.

### 5. *Intent of the Parties as to the Boundary*

Ziggy's contends that when Rubenstein sold the property to Kaiser-Aetna the parties intended the boundary between the parcels to be the dirt road, and that the legal description provided in the deed mistakenly placed the boundary line north of the road and into the cultivated fields. We find no merit to this contention.

There is no evidence in the record indicating the *intentions or beliefs* of Rubenstein and Kaiser-Aetna as to the true boundary line of the property. Although it seems logical that they would divide the property at the dirt road, the deed from Rubenstein to Kaiser-Aetna conveys a strip of land encompassing the entire roadway and a portion of the field. Absent evidence to the contrary, we must assume that the deed description expressed the intention of the parties in that transaction. Unfortunately, what is likely a deed description dispute, appropriately the subject of an action for reformation of the deed from Rubenstein to Kaiser-Aetna, has been transmogrified into an action to quiet title claiming adverse possession.

Even if there was evidence indicating a mistake of fact as to location of the true boundary, the result in this case would be the same. A person who holds land beyond his boundary up to a fixed visible boundary line based on a mistake as to the true location of the boundary can claim adverse possession if he has possession of the land with the intention to claim up to the mistaken line regardless of the true boundaries. *See Higginbotham v. Kuehn,* 102 Ariz. 37, 424 P.2d 165 (1967); *Trevillian v. Rais,* 40 Ariz. 42, 9 P.2d 402 (1932). However, because the disputed property was farmed by Brooks and Wiechens as tenants for both I–10 and Ziggy's from 1970 until 1980, Ziggy's cannot show that it, rather than I–10, was actually in possession of the land during the relevant period.

### 6. *Conclusion*

Based on the foregoing, the judgment and award are reversed as to all parties. The State's cross-claim for "money had and received" is dependent upon Ziggy's success on its claim of adverse possession. Because we reverse as to Ziggy's claim, we also reverse the trial court's judgment and award in favor of the State on its cross-claim. We remand to the trial court with directions to vacate the judgment and enter judgment in favor of appellants.

JACOBSON, P.J., and CONTRERAS, J., concur.