# Staunton.

Clinchfield Coal Co. and Others v. Viers.

September 15, 1910.

Absent, Cardwell, J.

1. Boundaries—*Location*—*Case in Judgment.*—Upon the evidence touching the boundary line in controversy, it is held that the true location of the line is that claimed by the appellants.

2. Adverse Possession—*Possession by Mistake.*—When the occupation of land is by a mere mistake, and with no intention on the part of the occupant to claim as his own land which does not belong to him, but intending to claim only to the true line, wherever it may be, the holding is not adverse.

Appeal from a decree of the Circuit Court of Dickenson county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Phlegar & Powell, Ayers & Fulton, W. H. Rouse, Vicars & Peery* and *A. A. Skeen,* for the appellants.

*Roland E. Chase* and *S. H. Sutherland,* for the appellee.

Harrison, J., delivered the opinion of the court.

The bill in this case was filed by the appellee, H. H. Viers, asserting title to and possession of a strip of land contained 81.99 acres in the county of Dickenson, and alleging that by reason of divers conveyances, the appellant, Clinchfield Coal Company, claimed to be the owner of the coal and

minerals on said strip of land, and the appellants, T. K. Colley and wife, the owners of the surface thereof, and seeking to have the conveyances under which the appellants claimed set aside as alleged clouds upon his title.

The title of the appellee to the strip of land was put in issue by the pleadings, and upon that issue a final decree was rendered by the circuit court, sustaining the contention of the appellee and ordering the deeds mentioned in the bill to be cancelled and annulled. This decree is brought under review by the present appeal.

It appears that about the year 1858 Robert Fugate, a surveyor, ran a line through the section of country where the lands here involved are situated. The true location of this line is the vital question upon which this controversy turns.

At the time this Fugate line was run, James Colley owned a large body of land in its neighborhood, and it is through him that both parties to this controversy claim title. In the year 1884, James Colley, who had been selling off portions of his land, had the line run which is known in the record as the Thornbury line. This line is four and one-half miles in length, is well marked and identified, and the appellants contend that it is the alleged Fugate line re-established by Thornbury.

A careful examination of the record leads us to the conclusion that this contention is sustained by the weight of evidence, both oral and documentary. It satisfactorily appears that throughout the entire length of this Thornbury line, and as far back as the records shed any light upon the subject, the citizens on both sides thereof have recognized it as the true line by which their titles were determined. In numerous deeds passing title from one to the other, on both sides of this line, it is referred to, sometimes as the Thornbury line and sometimes as the Fugate line, the metes and bounds in the respective deeds showing that the several tracts of land conveyed ran to this well established line, thus recog-

nizing the Fugate line and the Thornbury line as one and the same. The appellee, in effect, recognized this as the true line by deed of July 23, 1904, in which he unites with others in conveying to the grantee all the coal on a certain tract of land, the boundary lines called for in the deed going exactly to and no further than the Thornbury line.

The line contended for by the appellee as the true Fugate line is located by him on an average of about fifty-five poles north of the Thornbury line, thus leaving the disputed strip between the two contending lines. In support of the contention that the true Fugate line is that insisted upon by him, appellee mainly relies upon certain marked timber in the neighborhood of the disputed land. Some of these marked trees were blocked and the blocks exhibited with the record, and considerable evidence given concerning them. The few blocks adduced were from trees embraced within a very short distance. They were all located in the neighborhood of and within the length of the boundary line to one side of appellee's tract of 185 acres. The evidence shows that these marks vary in age as much as twelve years, and one of them does not appear to have been made by an axe or hatchet, but to have been the result of a bruise on the tree. The evidence with respect to these marks wholly fails to show their value as tending to establish the true Fugate line. It very clearly appears that they were not made by Robert Fugate. One of the surveyors called by the appellee states positively that the marks in question were made by a surveyor by the name of Looney. These marks, so far as made by a surveyor, were evidently never made as indicating the Fugate line, but were made in running some other much shorter line. Outside of these marks, there is not an object shown having the slightest tendency to establish the true Fugate line as being upon the location contended for by the appellee, which location, if established,

would unsettle numerous titles and almost certainly precipitate much litigation.

It is not necessary, and we will not attempt in this opinion, to review all of the voluminous evidence adduced by both the appellants and the appellee in support of their respective contentions as to the true location of the Fugate line. It must suffice to say that, in our judgment, the appellee falls far short of sustaining his claim, and that the great preponderance of evidence establishes the Thornbury line to be, as claimed by the appellants, the true Fugate line. It follows from this conclusion that the disputed strip of land is not within the calls of the deeds of the appellee, but is covered by the deed of the appellants.

It is further claimed by the appellee that he has held adverse possession of the disputed strip of land for a sufficient length of time to acquire the legal title thereto as against the true owner.

It is only necessary to say, in answer to this contention, that the record clearly shows that the appellee never claimed title further north than the true Fugate line, and had no intention of claiming land that did not belong to him. The great weight of authority is in favor of the view, that when the occupation of the land is by a mere mistake, and with no intention on the part of the occupant to claim as his own land which does not belong to him, but intends to claim only to the true line, wherever it may be, the holding is not adverse; the intention to hold adversely being an indispensable element of adverse possession. *Schaubuch* v. *Dillemuth*, 108 Va. 86, 60 S. E. 745.

For these reasons the decree appealed from must be reversed, and this court will enter such decree as the circuit court ought to have entered, dismissing the appellee's bill with costs.

*Reversed.*