## Wytheville.

### E. W. AND BERTA CLATTERBUCK V. JOHN N. CLORE.

#### June 16, 1921.

1. PRESCRIPTION—*Private Way*—*"Proprietary Use."*—It is essential to the acquisition by prescription of an easement of a private right of way over the lands of another, that the use of the way, however long continued, must, for the prescriptive period of twenty years, have been a proprietary use, exercised under some claim which is independent of the claims of all others and not dependent for its enjoyment upon similar rights in others.

2. PRESCRIPTION—*"Exclusive Use."*—By the words "exclusive use," which define one of the elements essential to the acquisition of a prescriptive right, is meant that the use is a proprietary one and not a use by the public generally.

3. PRIVATE WAYS—*Prescription*—*Case at Bar.*—In the instant case there was a user of the road in question by one of complainant's predecessors in title to a portion of the land to which complainant obtained a deed in 1904, which user was from sometime after 1889 up to 1904.

   *Held:* That if that user could have been tacked to the user of the road by complainant after 1904, still complainant failed to supply any definite evidence as to when his predecessor's user began. So that the evidence failed to show that the prescriptive period had run from the beginning of the predecessor's user of the road to the obstruction of it by defendants in 1920.

4. ADVERSE POSSESSION—*Intention to Hold Adversely*—*Mistake.*—The intention to hold adversely is an essential element of adverse possession; therefore, where one occupies land of another through a mistake as to the boundary of the land, with no intention to claim that which does not belong to him, his possession is not adverse so long as such mistake continues.

Appeal from a decree of the Circuit Court of Madison county. Decree for complainant. Defendants appeal.

*Reversed and Bill Dismissed.*

This suit in equity was instituted in February, 1920, by the appellee. The bill seeks to have the appellants enjoined and restrained from closing a certain private right of way at a place where it passes over a parcel of about one and one-half acres of land which appellants claim to own, and which the bill admits is embraced in the deed under which appellants derive title, but which, the bill alleges, is in truth owned by the appellee. The bill also alleges that the appellee had before suit brought acquired the prescriptive right to the right of way over said parcel of land, by adverse use of the way by appellee and his predecessors in title as appurtenant to an adjacent tract of land, which will be hereinafter designated as appellee's home tract of land, to which appellee claims title under a deed obtained in 1904, which adverse use is alleged to have been "under a claim of right, exclusively, continuously and uninterruptedly * * * * for more than twenty years, openly, constantly and notoriously."

The appellants answered the bill, claiming the ownership of said parcel of one and one-half acres of land under their deed above referred to, denying that the appellee had acquired the prescriptive right to the said right of way across such parcel of land by adverse claim of right and user for the prescriptive period, alleging that the road had not been located on such parcel of land for as long as the prescriptive period, that since the road had been located on such parcel of land its use by appellee had not been hostile to the right of appellants, but in common with others as to all of whom such use was permissive on the part of the appellants and their predecessors in title "out of neighborly kindness," and alleging also, that the road where it for many years crossed another part of the land at the time of suit, was never at any time used by appellee under any claim of right, but merely, in common with others, by permission of the

then owners of the land over which the road passed. There are other allegations in the answer not material to be mentioned here.

The appellee took and filed in his behalf the depositions of himself and of a number of other witnesses, which however, when considered in the light most favorable for appellee, result in the showing of the following mentioned facts and absence of facts:

The predecessors in title of appellee to his home tract of land prior and up to the deed in 1904 by which appellee obtained title to such home tract, for a continuous period of over eighty years, used a private road which is shown approximately on the following diagram by the black dashed lines, A E e b D, over land, designated in the record as the Gibbs-Gordon land, consisting, before its division presently to be mentioned, of ninety-eight acres, which ninety-eight-acre tract did not belong to appellee's predecessors in title or to any of them, and which, so far as the record discloses, was never held by any one under a common ownership with appellee's home tract of land.

The diagram referred to is as follows:

```
o o o   Road from C. to A, as established by
          decree under reviews
- - -   Road as used before 1906.
_____   Road from B to C as used since 1906.
x x x   Overlap of boundary of appellant's land
          to east of road, per their deed.
```

This Gibbs-Gordon land did not extend to the residence on the home tract of land of appellee, but only to the point

A, shown on the above diagram, on a line dividing the Gibbs-Gordon land from such home tract, which line extended to the east and west of the point A. The road, from said residence to A, and passing over the Gibbs-Gordon land from A to D, along the route A E e b D, was used by the predecessors in title of appellee to and from said home tract of land for the period aforesaid up to 1904, as an outlet from such land to a public road known as the "Oak Park Road." The last named road passes along by the points D, F, G and H, shown on the diagram.

The testimony in the record fails to show that the outlet just mentioned was a way of necessity for the said house tract of land. According to the testimony such way was a convenient, but not a necessary, outlet for such land, even prior to appellee's acquisition of a portion of the Gibbs-Gordon land presently to be mentioned. Appellee testifies, "*    * I have no other outlet to the Oak Park Road unless by going a roundabout way of two and a half or three miles." And it appears from another portion of appellee's testimony that there is another private road from such land which has been used for a great many years as an outlet therefrom to and from another public road to the west of such land known as "Russell's Ford road."

Since 1904, the portion of the Gibbs-Gordon land acquired by the appellee, as will be more particularly hereinafter set forth, by a slight change of the route of the road from B C to B H, shown on the diagram, would have afforded appellee a road over his own land all the way from his home place tract of land out to the Oak Park road, without any question or controversy with appellants, as appears from the evidence in this cause.

Moreover there is no testimony in the cause to show that the right of way, upon the location, as the road was used up to 1904 as aforesaid, was used by appellee's predecessors in title under any proprietary claim of right of any

sort, or under any claim of right independent of others of the public generally and those living in the same section, either as a way of necessity, or as a proprietary right of way established or acquired in any manner whatsoever.

It further appears from the testimony in the record that in 1889 the Gibbs-Gordon land was divided into two parcels by a survey then made. As the dividing line between the two parcels was then actually run on the ground it was a straight line from the point F to the point G, shown on the diagram; the parcel on the west side of such dividing line being surveyed as the land purchased by one Edmonia Sparks, a predecessor in title of the appellants, and the parcel on the east side of such line being surveyed as the land purchased by one Robertson, or Robinson, a predecessor in title of the appellee. There were deeds obtained in 1889, or thereabout, by Edmonia Sparks and Robertson, or Robinson, to such parcels of such land, but they are not in the record and hence the record does not disclose whether such conveyances fixed the dividing line as it was surveyed on the ground as aforesaid, or the contrary. Edmonia Sparks, by deed of date of May 29, 1918, conveyed to the appellants a part of her said forty-eight-acre half of the Gibbs-Gordon land by metes and bounds which when run on the ground over-lapped the said dividing line as surveyed in 1889 as aforesaid, extending a short distance to the east of the portion of the road from C to B, as indicated approximately by the small cross-marks on said diagram. The land C B H, including that covered by the road from B to C, is the parcel of about one and one-half acres first above mentioned, the ownership of which is in dispute between appellants and appellee.

The appellee and his predecessors in title to his portion of the Gibbs-Gordon land have all along claimed title to the land bounded on the west by a straight line drawn from F to G on said diagram—appellee claiming title to such

portion of such land under mesne conveyances from Robertson, or Robinson, down to a deed conveying same to appellee in 1904. · This deed, although made the same year (1904), was a different deed from that by which appellee acquired title to his home tract of land. A predecessor in title of appellee to his part of the Gibbs-Gordon land, named Watson, changed the location of the road from the route A E e b D to the route A E B b′ C some time between 1889 and 1904—the precise date not being shown in evidence. This was done by Watson under the mistaken impression that he was thus locating the road wholly on his part of the Gibbs-Gordon land. Watson, however, was not an owner of the appellee's home tract of land, and appellee's user of the road as the owner of such home place, under the general claim of right of himself and his predecessors in title to that place aforesaid, continued until appellee obtained his aforesaid deed to his half of the Gibbs-Gordon land in 1904. When appellee obtained such deed he continued to use the road along the route A E B b′ C, but under a different claim of right, namely, in right of his ownership of the portion of the Gibbs-Gordon land conveyed to him by such deed. From the time he obtained such deed in 1904 until some time in 1906, however, appellee supposed that the road was located altogether on his own land—from his residence to A on his home tract, and from A to C, along the route A e B b′ C on his half of the Gibbs-Gordon land; and appellee used this road along this route during this time under the claim that it was located on his own land all the way from A to C. It appears from the evidence in the cause that from A to B the road was during this time unquestionably on appellee's half of the Gibbs-Gordon land. From B to C, the road located along the route B b′ C, was in fact partly to the west of the dividing line aforesaid as claimed by appellee, and hence on the Sparks land, now the land of appellants, as that land is located according to the

admission all along of appellee. The claim of appellee that this portion of the road was then on the land which he claimed to own was, however, a mistaken claim, founded on the mistake of appellee as to where the dividing line aforesaid, if run straight from F to G, as he claimed it, ran upon the ground; this locality being in woods and he being then under the impression that the road B b' C was located east of such dividing line and on the land which he claimed to own as aforesaid.

It was some time in 1906 that appellee discovered the mistake under which he was acting as above set forth. Some time during 1906 appellee decided to have the dividing line aforesaid re-surveyed, and with the consent of Mrs. Sparks who then owned the land to the west of such dividing line, as aforesaid, appellee employed a surveyor and had the line surveyed. The surveyor ran the line as a straight line from F to G shown on the diagram and located it on the ground. Thereupon appellee found that the road from B to C along the route B b' C was, for the most part, not on the land which appellee claimed to own, but was, as he admitted, partly—on the Sparks land. Thereupon by or with the assent of appellee the location of the road was changed from the route B b' C to the route B C so as to be to that portion of it also on appellee's portion of the Gibbs-Gordon land as appellee claimed such land was located. And from that time on to the institution of this suit, appellee continued to use the road along the route A E B C under the claim that it was located wholly on his part of the Gibbs-Gordon land.

Shortly before the institution of this suit the appellants obstructed the road at a point on the said parcel of one and one-half acres claimed to be owned by them.

The decree under review, upon the merits, decided the cause solely on the ground of the prescriptive right aforesaid. The decree so far as material, is as follows:

"* * * the court doth further adjudge, order and decree that the plaintiff (the appellee) "has a private right of way by prescription from his farm which was conveyed to the plaintiff * * by deed dated the 5th day of October, 1904, through the tract of land formerly owned by H. W. Gordon and U. S. Gibbs to the Oak Park Road as used and located at the present time and more particularly described as follows:" (Here follow certain courses and distances which locate the road approximately along the route C B E A as shown on the above diagram) "into the said plaintiff's" (appellee's) "tract of land aforesaid, * * and * * that the said defendants" (appellants) "be and they are hereby perpetually enjoined from obstructing or interfering or hindering the plaintiff from traveling over and along the said private right of way located as hereinbefore set forth and that the plaintiff recover of the defendants his costs in this suit expended."

*Will A. Cook*, for the appellants.

*N. G. Payne* and *John S. Chapman*, for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

In the view we take of the case it will be necessary for us to consider only one question which is presented by the assignments of error, as that, in our opinion, is decisive of the case. Such question is as follows:

1. Did the court below err in holding that the appellee had acquired the prescriptive right to use the road along the route as established by the decree under review?

This question must be answered in the affirmative.

[1, 2] In accordance with numerous decisions of this court, it is essential to the acquisition by prescription of an

easement of a private right of way over the lands of another, that the use of the way, however long continued, must, for the prescriptive period of twenty years, have been "a proprietary use, exercised under some claim which is independent of the claims of all others and not dependent for its enjoyment upon similar rights in others." *Landrum* v. *Tyler,* 126 Va. 600, at p. 601, 101 S. E. at p. 788, and cases cited. That is to say by the words "exclusive use," (which define one of the elements essential to the acquisition of the prescriptive right), it is meant "that the use is a proprietary one and not a use by the public generally." *Muncy* v. *Updyke,* 119 Va. 636, p. 639, 89 S. E. 884, 885.

This essential element was lacking in the use of the road by appellee and his predecessors in title to his home tract of land prior to appellee's obtaining his deed in 1904 to a portion of the Gibbs-Gordon land, all as set forth in the statement of facts preceding this opinion. Hence we are of opinion that no right of use of such road had been acquired by appellee in 1904, at the time he obtained the latter deed, and that the use of the road prior thereto cannot avail the appellee in any way as giving him any prescriptive right to such easement.

[3] There was a user of the road by Watson, one of appellee's predecessors in title to the portion of the Gibbs-Gordon land to which appellee obtained a deed in 1904, which user was from some time after 1889 up to 1904. If that user could have been tacked to the user of the road by appellee after 1904, the appellee has failed to supply any definite evidence as to when Watson's user began. So that the evidence in the cause fails to show that the prescriptive period had run from the beginning of Watson's user of the road to the obstruction of it by appellants in 1920.

[4] Further, as to Watson's user, in so far as it was under claim of ownership of the land on which the road was then

located, that user was under such a mistake as to the boundary of the land, as appears from the statement of facts above, that it was not adverse so long as such mistake continued. *Christian* v. *Bulbeck*, 120 Va. 74, 90 S. E. 661, and cases cited.

What is last said is true also of appellee's user of the road from 1904 until he discovered the mistake under which Watson had acted and under which appellee acted until the latter had the dividing line surveyed and run on the ground in 1906. Then for the first time it was disclosed to the parties that the road was admittedly located not on, but partly to the west of the portion of the Gibbs-Gordon land owned by Watson and subsequently by appellee, on conceding to them all of such land claimed by them. Then, for the first time, that portion of the road which alone is really in controversy in this cause, namely, the road shown on the diagram preceding this opinion as B C, was changed from the location B b' C to that of B C, as shown on such diagram. This change was by or with the consent of appellee, and was made for the purpose of locating the road on such last named land, so that it would be altogether on appellee's land, as is fully set forth in the statement of facts aforesaid preceding this opinion.

Appellee's first adverse user of the road under any proprietary claim of right, therefore, must be considered to have begun in 1906, when he discovered his aforesaid mistake. Appellants obstructed such road in the early part of 1920. This suit was brought thereafter in 1920. Hence, the prescriptive period of twenty years from 1906 had not run when such obstruction occurred; nor had such period expired when this suit was brought.

It follows, therefore, from the application of the well settled rules of law aforesaid to the facts of the case, that the decree under review must be reversed and the bill of the appellee must be dismissed with costs to appellants.

*Reversed and bill dismissed.*