## CIRCUIT COURT OF ALLEGHANY COUNTY

Howard L. Via and
Clara L. Via

v.

Earl L. Windsor and
Esther R. Windsor

January 20, 1976

Case No. 1402

By JUDGE ROSCOE B. STEPHENSON, JR.

This is a suit brought by Howard L. Via and Clara L. Via (Via), against Earl L. Windsor and Esther R. Windsor (Windsor), pursuant to Code § 8-836, to establish the boundary line between their respective properties.

The evidence, which is without material conflict, was heard without a jury and established these facts. Via is the fee simple owner of land identified as Lot 1 and 2, Block 17, Section 4, as shown on the map of the Clifton Forge Company. Windsor is the fee simple owner of Lot 3 in said block. All three lots were originally owned by Mary E. Johnson and J. G. Johnson, her husband. While the Johnsons owned these lots they constructed a picket fence around what was purported to be Lot 3 and they constructed a wire fence around three sides of Lots 1 and 2, tying the wire fence to the picket fence. That is to say, the picket fence ostensibly divided Lots 1 and 2 from Lot 3. In 1946 the Johnsons conveyed Lots 1 and 2, which were enclosed by the fence as aforesaid, to S. W. Sharp and Josephine A. Sharp, his wife. According to the Sharps, the Johnsons intended to sell and convey and the Sharps intended to purchase all the land lying within

the wire fence (on three sides) and the picket fence (which separated the land sold by the Johnsons and the land retained by them). The Sharps continued to own these two lots as fenced until they sold and conveyed them to Via in 1963. While they owned them, the Sharps permitted others to use it as a garden for two or three years. Both Mr. and Mrs. Sharp testified that they always claimed and possessed everything that was under fence. Mr. Sharp continued to reiterate, "I bought what was under fence, and I claimed what was under fence." He further testified that Mr. Johnson represented the picket fence to be the division line between their properties.

Since 1963 Via was in possession of the land enclosed by the fence purporting to be Lots 1 and 2. In 1968 Via built a house on these lots. Mr. Sharp told Mr. Via, before delivery of the deed, that he was selling him all land which was under fence. Mr. and Mrs. Via testified that they claimed all land within the fence, i.e., to the picket fence between the two properties.

Windsor acquired title to Lot 3 in 1957. Mrs. Windsor testified that she and her husband owned the picket fence. She further testified that "up until last Summer I never claimed beyond the picket fence."

The matter became controversial, for the first time, when Windsor tore down the picket fence in March, 1975. Mrs. Windsor testified that she and her husband planned to put a new fence along the same line as the old and therefore left the corner posts which are still in place. Thereafter, Via had R. Riner, a Certified Land Surveyor, make a survey which indicated that the picket fence was 18 inches within the Via property at the front, and on the survey line at the rear. Windsor had E. L. Huffman, also a Certified Land Surveyor, make a survey which indicated the picket fence was on Windsor by 18 inches at the front and by 2.13 feet at the rear.

At the conclusion of all the evidence, the Court took a view of the property.

Via claims title to all land to the picket fence line by adverse possession, relying upon the possession of the Sharps and themselves which covered a period of about thirty years. Windsor relies upon the paper title and the Huffman survey, and further contends that since

the location of the fence was a mistake, Via's claim of adverse possession fails.

Where a person occupies and possesses the land of another, through a misapprehension or mistake as to the boundaries of his land, with no intention to claim as his own that which does not belong to him, but only intends to claim to the true line, wherever it may be, he does not hold adversely. *Schaubuck* v. *Dillemuth*, 108 Va. 86, 60 S.E. 745 (1908); *Clinchfield Coal Co.* v. *Viers*, 111 Va. 261, 68 S.E. 976 (1910); *Stuart* v. *Meade*, 119 Va. 753, 89 S.E. 866 (1916); *Clatterbuck* v. *Clore*, 130 Va. 113, 107 S.E. 669 (1921).

This proposition does not apply, however, where the evidence establishes that a specific intention exists on the part of the possessor to claim title to a definite line on the ground. Therefore, if a person takes and holds actual possession beyond the true boundary line, and with good faith, though mistaken, claims title to and occupies the land, his possession is adverse to the extent of his actual possession, and such possession if continued unbroken for the statutory period, will ripen into a perfect title. *Christian* v. *Bulbeck*, 120 Va. 74, 90 S.E. 661 (1916).

> Where a claimant takes possession of land by mistake and holds adversely, claiming title, for the statutory period, the law is not concerned with what might have been his intention if he had known he had no title to the land before his possession ripened into title; the question is what was his intention during the period of his holding. The true question is whether, when he acquired possession, he intended to hold it as his own and against all persons; the intention is the test, and not the mistake. It is said that the intent with which possession is held rather than an intention to hold in accordance with a claimant's deed is controlling. The fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is held not to be a controlling factor. If one occupies land intending to occupy it as his own his occupancy is adverse, and he may have such intent even

though he is mistaken as to the facts of legal ownership. 3 Am. Jur. 2d, *Adverse Possession*, sect. 40. *See*, 80 A.L.R.2d 1177-1181.

In the case at bar the uncontradicted evidence established that both Sharp and Via intended to claim title to the picket fence, that they occupied all the land to that fence, that their possession was adverse to the extent of their actual possession, and that such possession continued unbroken for a period of more than fifteen years.

Since this evidence is undisputed and is consistent with the long existing physical evidence, the Court is constrained to hold that the lawful boundary line between the two properties is the line designated on the exhibits as "old fence" and referred to herein as the picket fence. This line shall be marked at each end by permanent monuments and the Court order which establishes this line shall be recorded in the current Deed Book and indexed in the names of the parties (each as both grantors and grantees).