SHIRLEY T. UMBARGER

V.

JOHN THOMAS PHILLIPS, II, EXECUTOR UNDER
THE LAST WILL AND TESTAMENT OF
MARGIE VIRGINIA MCCALL PHELPS, DECEASED

Record No. 891170

June 8, 1990

Present: All the Justices

*John S. Norris, Jr. (James P. St. Clair; Anderson, Lee & Norris*, on brief), for appellant.
*John T. Phillips, II*, for appellee.

JUSTICE LACY delivered the opinion of the Court.

This is an appeal from a trial court order declaring that the estate of Margie Virginia McCall Phelps, represented by its executor, John Thomas Phillips, II, included an easement by prescription over an adjoining tract of land owned by appellant Shirley T. Umbarger.

On appeal, Umbarger contends that Phillips failed to prove by clear and convincing evidence all the requisite elements of a prescriptive easement. Specifically, Umbarger argues that Phillips failed to prove that the use of her property was adverse, and that she had actual knowledge of, and acquiesced in, the use of her property.

## I.

Based upon well-settled principles, we will state the facts in the light most favorable to Phillips. The Phelps property lies to the southwest of the intersection of Pretty Lake Avenue and First Bay Street, where the latter comes to a dead end, in the Oceanview section of Norfolk. The northern boundary of the property abuts Pretty Lake Avenue. The eastern boundary of the property abuts a strip of land, owned by Umbarger, which is 30 feet wide and runs north to south from Pretty Lake Avenue to the waters of Little Creek.

Both the Phelps property and Umbarger's 30-foot strip were originally part of a tract of land owned by the Garrett estate. Stanley and Margie Phelps acquired their property in 1941. Ocean View Land Corporation (OVLC) acquired the 30-foot strip in 1983 and conveyed it to Umbarger in 1985.

Sometime before 1945, Stanley Phelps constructed a driveway straddling the eastern boundary of his property. The driveway runs in a southerly direction for approximately 135 feet from

Pretty Lake Avenue before curving around behind the Phelps house. As the driveway meanders along the 135-foot southerly extension, it intrudes into Umbarger's adjoining 30-foot strip of property to varying extents; from five feet at the beginning of the driveway to sixteen feet at its midpoint. Although the driveway has never been wider than the width of a car, it has been improved over the years, changing from two worn tire paths to its present dirt and gravel condition. It has remained in substantially the same location since it was constructed. At one point, Phelps erected a wire fence on the east side of the driveway. In 1965 he erected a wooden fence along the northern boundary of his property, with an opening in the fence for the mouth of the driveway.

Since its construction, the driveway has been used for ingress and egress to the Phelps property and was used daily for that purpose until April of 1984, when Margie Phelps died. At the end of 1984, tenants occupied the Phelps property and continued to use the driveway in conjunction with the residence.

OVLC discovered the intrusion of the driveway in 1983 when it had the 30-foot strip surveyed in association with purchasing the property. After acquiring the property in 1985, Umbarger erected a fence along the northern and western boundaries of the 30-foot strip, blocking access to the eastern half of the driveway.

Upon discovering the newly erected fence, Phillips had it removed and filed a petition for injunction seeking to enjoin Umbarger from further obstructing the driveway. In his second amended petition for injunction, Phillips alleged that he was entitled to a prescriptive easement over that portion of the 30-foot strip upon which the driveway was constructed and, therefore, he requested the court to enjoin Umbarger from interfering with his use of the driveway.

By letter opinion dated May 6, 1988, the trial court ruled that Phillips had established, by clear and convincing evidence, a prescriptive easement over Umbarger's property. However, because the extent of the easement had not been ascertained, due to Phillips' failure to identify his survey in pretrial discovery, the court requested both parties to prepare for a subsequent hearing at which evidence could be submitted "to determine the extent of [the] easement so that it may be fixed in the final decree." On June 23, 1989, the trial court issued its final order which established the extent of the easement, as shown on a survey introduced

by Phillips at the hearing, and permanently enjoined Umbarger from interfering with the easement.

## II.

In determining whether a claimant has established a prescriptive easement over the lands of another, we are guided by long-standing principles.

To establish a private right of way by prescription over lands of another, the claimant must prove, by clear and convincing evidence, that his use of the roadway was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years.

*Ward* v. *Harper*, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987). *Accord Pettus* v. *Keeling*, 232 Va. 483, 485, 352 S.E.2d 321, 323 (1987); *Martin* v. *Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661 (1984); *Craig* v. *Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322 (1961). However, when the user of a way over another's land clearly demonstrates that his use has been open, visible, continuous, and exclusive for more than twenty years, his use is presumed to be under a claim of right. *Pettus*, 232 Va. at 485, 352 S.E.2d at 323. "[T]his presumption of a grant or adverse right is in Virginia *prima facie* only and may be rebutted by evidence." *Davis* v. *Wilkinson*, 140 Va. 672, 677, 125 S.E. 700, 702 (1924).

Phillips' evidence clearly demonstrated that the Phelpses used the property daily as the only means of ingress and egress for their home for almost 40 years and posted the drive as private, demonstrating to the world that they considered it theirs and theirs alone. Thus, according to the rule stated above, Umbarger's charges must be viewed as efforts to rebut the presumption of prescriptive easement raised by Phillips' evidence.

## A.

Umbarger maintains that Phillips' claim of a prescriptive way over her property fails because his evidence did not clearly establish an adverse claim. At trial, the Phelpses' daughter, Caroline Phillips, testified that she grew up on the property and

remembered the driveway well. She further testified that, "to the best of my knowledge, it always was" on the Phelps property, and that "[t]o the best of my knowledge, my father constructed it on our property, as far as he knew." Relying on *Clatterbuck v. Clore*, 130 Va. 113, 107 S.E. 669 (1921), Umbarger argues that, if the user of a way labors under the mistaken belief that he owned the property, the user cannot acquire a prescriptive right to use such way, because his use is not adverse.

Assuming, without deciding, that a mistake regarding the ownership of a way would defeat a prescriptive claim, Umbarger's challenge must fail, nevertheless, due to a lack of proof. Umbarger's evidence fails because it consists merely of a third party's assumption as to the user's intention regarding the property. Stanley Phelps was unavailable to testify and his daughter's inference that the location he chose for the driveway indicated that he believed it was wholly on his property is insufficient to prove a mistaken intent. One just as easily could infer from the fact that he occupied the land that he intended to occupy whatever was in that strip, no matter who owned it. Without direct evidence regarding Stanley Phelps' intentions, Umbarger's attempt to rebut the presumption of adverseness must fail.

## B.

Umbarger next contends that Phillips failed to prove that she had actual knowledge of, and acquiesced in, the use of her property. Both parties note that, as to prescriptive easements, there is no articulated rule in Virginia regarding the type of knowledge necessary to establish that the servient owner has acquiesced in the claimant's use. Umbarger maintains that actual knowledge should be the standard, arguing that "the servient landowner may never know of the occasional use of his property in a prescriptive easement case."

In determining whether evidence was sufficient to give rise to the presumption of an easement by prescription, we have said that the prescriptive use must occur often and long enough so that it gives the landowner reasonable notice that a right adverse to his interest is being exercised. *McNeil v. Kingrey*, 237 Va. 400, 404, 377 S.E.2d 430, 432 (1989). If these threshold elements of proof are met and unrebutted, we have upheld a prescriptive easement without an additional showing of actual knowledge and acquiescence of the servient owner. *Id.* at 404-05, 377 S.E.2d at 432;

*Williams* v. *Green*, 111 Va. 205, 208, 68 S.E. 253, 254 (1910). While no presumption arises if the use was concealed, *see, C & E Partnership* v. *Donnelly*, 235 Va. 301, 305, 367 S.E.2d 490, 492 (1988), the presumption, if established, does not deprive the servient owner of an opportunity to defend against the right being asserted.

■ We, therefore, concur with the majority of our sister jurisdictions, which hold that a rule requiring a landowner to have actual knowledge of a prescriptive easement claim unfairly favors the absent or careless landowner. *See* Thompson, *Real Property*, § 340, p. 194 (repl. 1980). If the nature of the use was such that a reasonable person would discover its existence; i.e., open, continuous, uninterrupted, and obvious, the presumption arises, and it encompasses the element of the landowner's knowledge of the use. Thus, actual knowledge need not be shown under the present circumstances.

■ Here, the Phelpses' use of the driveway was shown to have been open, notorious, visible, and uninterrupted for almost 40 years. These facts establish the presumption and imply the requisite level of knowledge on the part of Umbarger.

Umbarger's additional claims that the use was not shown to have existed for the required prescriptive period and that it was not continuous are without merit.

### III.

Finally, Umbarger maintains that the trial court erred in using inadmissible evidence to determine the boundaries and location of the easement after it had rendered judgment. We disagree.

■ Despite not having evidence of the easement's exact location, the trial court had sufficient evidence before it to find the existence of a prescriptive easement, and it so ruled. After ruling that the easement existed, the trial court properly held a subsequent hearing to establish the precise location of the easement. Umbarger failed to introduce evidence at that hearing. Thus, the trial court based its award on the only evidence available—Phillips' survey.

For the foregoing reasons, we will affirm the judgment of the trial court that the Phelps estate included a prescriptive right to use the driveway without interference.

*Affirmed.*