## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Luther B. Jones et al.

v.

Charles B. King, Jr., et al.

December 4, 1995

Case No. CH93-237

By Judge William H. Ledbetter, Jr.

In this suit, the court must determine whether King has the right to use an old road that crosses the plaintiffs' properties for access to his Bleak House Tract.

### *Facts*

The plaintiffs are owners of residences and residential lots in Battlefield Estates and Greenwood Estates subdivisions off Route 3 in the rural Wilderness area of Spotsylvania County. King owns 505 acres known as the Bleak House Tract located to the north of the subdivisions. He also owns an adjoining 71-acre parcel known as the Miller Tract, another adjoining parcel platted as Greenwood Estates Section III, and several lots in other sections of Greenwood Estates.

Battlefield Estates and Greenwood Estates are accessed from Route 3 by State Route 640 that runs through Battlefield Estates and connects with streets that serve the subdivisions. State maintenance of Route 640 terminates in Battlefield Estates.

The road in question runs from Route 640 more or less along Battlefield Drive, Maxson Court, and then north along a ridge line across the plain-

tiffs' subdivision lots to the Bleak House Tract. The road is referred to as "Branch 2" in much of the testimony and in counsels' memoranda.

King contends that he has the right to use Branch 2 because of its historic use as a public road and, alternatively, as a prescriptive easement for ingress and egress to the Bleak House Tract.

## Proceedings

The plaintiffs instituted this suit to quiet title to their subdivision lots on July 14, 1993, after they received a written notice from King asserting his right to use the old road across their properties. King filed an answer and cross-bill, again claiming a right to use the old road. The case was referred to a commissioner in chancery who took evidence on December 8, 1994, and filed a 34-page report on August 28, 1995, in favor of the plaintiffs. King's exceptions to the report were argued on October 16, 1995, and taken under advisement. This opinion addresses the issues in dispute.

## Weight Given the Commissioner's Report

It is well-settled that a commissioner's report does not have the weight given to a jury verdict on conflicting evidence, Virginia Code § 8.01-610, but where, as here, the evidence has been taken in the commissioner's presence, the report is entitled to respect. *Eppes v. Eppes*, 181 Va. 970 (1943); *Hill v. Hill*, 227 Va. 569 (1984); *Morris v. U.V.B.*, 237 Va. 331 (1989); *Jamison v. Jamison*, 3 Va. App. 644 (1987). The commissioner is appointed to assist the chancellor, not replace him, but it is said that a commissioner's report comes to the court armed with a presumption of correctness at least as to factual findings. See *Morris, supra*. Therefore, the court must conduct an independent review of the evidence and the applicable principles of law and determine whether there is evidence in the record to support the commissioner's factual findings and whether principles of law have been properly applied.

## Public Road

King contends that he has presented ample evidence to establish that Branch 2 has been used by the public for more than a hundred years so that it is a public road that he is entitled to use as a member of the general public. He argues that the commissioner ignored this evidence, or at least did not give it the weight it deserved, and that the commissioner misapplied principles of law with respect to the establishment of public roads in Virginia.

There is no denying that King presented an abundance of evidence showing that an old road has existed at or very near the location he claims as Branch 2 for many years and that persons once used the road as access to property located between Route 3 and the Rapidan River to the north. He focused on Civil War maps and documents that disclose a road at or remarkably close to the location referred to as Branch 2 in this litigation. In addition, he offered copies of recorded deeds that contain mentions of an "old road" and "the public road" that seem to refer to Branch 2.

Generally, there are three recognized methods by which the public may acquire the right to use land for a public road: (1) by condemnation, (2) by continuous and adverse use by the public accompanied by some official recognition thereof, and (3) by dedication of the land by the owner to public use coupled with acceptance of the dedication by proper authorities. See 17 M.J., *Streets and Highways*, § 3.

King offered no evidence regarding a condemnation proceeding affecting Branch 2 or of a formal dedication-and-acceptance of the road for public use. Instead, his evidence concentrates on the historic use of the road by the general public, which the commissioner found unconvincing.

The mere use of a way by the public, for however long a period, will not make it a public road. There must be some acceptance of it by public authority having charge of roads and highways, binding the public for its care and maintenance, or a dedication of the road by the owner. See 17 M.J., *Streets and Highways*, §§ 4 and 23.

The Virginia statute reflects this general rule. Virginia Code § 33.1-184 provides, in pertinent part:

> When a way has been worked by road officials as a public road and is used by the public as such, proof of these facts shall be prima facie evidence that the same is a public road. And when a way has been regularly or periodically worked by road officials as a public road and used by the public as such continuously for a period of twenty years, proof of these facts shall be conclusive evidence that the same is a public road . . . .
>
> Nothing herein contained shall be construed to convert into a public road, a way of which the use by the public has been or is permissive and the work thereon by the road officials has been or is done under permission of the owner of the servient tenement.

King is correct that the statute does not constitute the sole means by which a public road can be established under Virginia law. The statute simply creates presumptive aids when a public way is claimed on the basis of long-time public use. Nevertheless, the statute is important to a determination of this case because historic public use is the *only* one of the three recognized methods of establishing a public road about which King presented any meaningful evidence. As noted above, there is no evidence in this case that the public has acquired rights in Branch 2 by condemnation or formal dedication.

When the statute is applied to the facts of this case, it is obvious that the statutory presumptions do not assist King in establishing the existence of Branch 2 as a public road. In fact, both prerequisites to the application of the statute are lacking.

First, the evidence is insufficient to show that the road has ever been "worked by road officials." Assuming that there is some physical evidence to support the theory that someone worked on the road in the past, thereby creating what are now traces of ditch banks, it does not follow that the court can infer that such work was done by public authority, much less "road officials." Evidence that work may have been done by military officials to improve passage over the road during the Civil War, in connection with battles fought nearby, is not persuasive; and, even if that evidence could be described as cogent, it has scant materiality when the real question is whether the road has ever been worked "by public officials as a public road." The use of dirt roads by military officials during time of war, even when they were improved by the troops for passage associated with battles, does not create public rights in such roads. (Otherwise, it could be said that practically every old lane, byway, and dirt road in the Fredericksburg area is burdened with some perilous characteristics of "public roads" in which the general public has historic rights.)

Second, the evidence is insufficient to show long-continued use of Branch 2 by the general public as distinguished from use by landowners, residents, and their guests. See *Burk Brothers of Va. v. Jones*, 232 Va. 238 (1986). See also *Stanley v. Mullins*, 187 Va. 193 (1948).

The commissioner was not persuaded by King's evidence of public use, nor is the court. Use of the road during the Civil War by troops engaged in battle is not a "public use" giving rise to public rights in the way. Use of the road by persons who lived along or at the end of the road, or who farmed or engaged in mining operations on land served by the road, is not necessarily "public use." The public character of a road is not determined

by the length of the road or by the number of persons who actually use it; on the other hand, its character does depend on whether it has been established that all the people have a free and unrestricted right to use it. *Shirley v. Russell*, 149 Va. 658 (1927). Here, King has failed to establish the public character of Branch 2. Unaided by the presumptions in § 33.1-184, his evidence falls short of demonstrating that which he says he has proved: historic use of the way as a public road.

The records adduced by King do not provide "record evidence" of the public character of Branch 2. The authorities point out that public roads should be matters of public record in some form and identified with reasonable certainty. See, e.g., *Bare v. Williams*, 101 Va. 800 (1903). The deeds in the clerk's office that King identifies as "record evidence" are not the sort of records that establish the existence of a public road. Those deeds are private transfers of real estate. They mention Branch 2, or a roadway at about the same location, as an "old road" and "public road" merely as a point of reference. The trite but true adage, "saying it doesn't make it so," applies here.

Finally, the evidence supports the proposition that Branch 2 has not been used by the public continuously, a necessary element in establishing the existence of a public road by long-continued public use. The photographs (Plaintiffs' Ex. 9) show young trees as well as considerable undergrowth, and various other obstructions, in the old roadway. Even King acknowledges that Branch 2 has not been used by the public for many years. It is the *use*, not just the *existence*, of a way that must be continuous in order to give rise to a public road, the existence of which was created by public use, not by condemnation or dedication.

In summary, the court is of the opinion that the evidence fully supports the commissioner's factual findings and, upon an independent review of the applicable legal principles, the court concludes that King has failed to establish the existence of a public road along the route of Branch 2.

Public policy as well as the specific facts of this case demand this result. If it were otherwise, old roadways such as Branch 2, or traces of such old roadways, used in former times by residents, loggers, farmers, or whomever, now in disuse or rarely used, would create havoc with land titles and enable claimants, such as King here, to lay claim to undocumented and invisible rights across others' properties, in the name of the public, where no such public rights exist.

*Easement by Prescription*

Alternatively, King contends that he has a prescriptive right of passage over Branch 2.

The uninterrupted use and enjoyment of an incorporeal right, such as an easement, for a period beyond the memory of men, was held at common law to furnish a presumption of a prior grant of that which has been so enjoyed. In Virginia, the period of enjoyment has been reduced from an "immemorial period" to a fixed period of twenty years, and the rule is stated as follows:

> To establish a private right of way by prescription over lands of another, the claimant must prove by clear and convincing evidence that his use of the roadway was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years. *Ward v. Harper*, 234 Va. 68 (1987). Also see 14B M.J., *Prescription*, §§ 7-13.

When the user of a way over another's land clearly demonstrates that his use has been open, visible, continuous, and exclusive for more than twenty years, his use is presumed to be under a claim of right. *Pettus v. Keeling*, 232 Va. 483 (1987). This presumption may be rebutted. *Davis v. Wilkinson*, 140 Va. 672 (1924). In every case, the burden is on the party claiming a prescriptive easement to establish its existence by clear and convincing proof. *Martin v. Proctor*, 227 Va. 76 (1984); *Markham v. Hall*, 215 Va. 683 (1975).

The servient landowner's actual knowledge of the prescriptive easement claim need not be shown. Such a rule would unfairly favor absent or careless landowners. However, the prescriptive use must occur often and long enough to give the servient landowner reasonable notice that a right adverse to his interest is being exercised. *Umbarger v. Phillips*, 240 Va. 120 (1990); *McNeil v. Kingrey*, 237 Va. 400 (1989). Therefore, if the nature of the use — open, continuous, uninterrupted, and obvious — was such that a reasonable person would discover its existence, the presumption arises and encompasses the element of knowledge. See *Umbarger, supra*.

The testimony of witnesses regarding prescriptive use of the roadway is adequately summarized in the commissioner's report (pp. 3-14, 18-23),

and need not be repeated here. The commissioner found that the evidence does not establish a prescriptive easement. The court agrees.

For many years, Branch 2 has been used only occasionally by King and various hunters walking the roadway or portions of it. Regular vehicular passage for the purpose of access to the dominant tenement has been absent for at least a generation. The commissioner found that King's use of the roadway since he acquired the Bleak House Tract in 1969 has not been open, notorious, or continuous enough to establish a prescriptive easement or even to create a presumption that his use is under a claim of right. The court likewise is of the opinion that King's use over the last quarter-century falls considerably short of that degree of clear and convincing proof needed to establish an easement by prescription across the lands of others.

Further, evidence of King's infrequent and low-visibility pedestrian use — and, before that, his occasional vehicular use — is not sufficient to establish the element of knowledge-and-acquiescence, as explained in *Umbarger, supra*, and *McNeil, supra*.

King argues that knowledge-and-acquiescence are shown by his conversations with several of the landowners and his attendance at a homeowners' association meeting in 1987. The landowners with whom King spoke deny that he was explicit about his claim; some thought he was asserting a right to use the subdivision streets. The commissioner found, upon conflicting testimony, that King's assertions were too vague and nonspecific to satisfy the knowledge-and-acquiescence requirement. Similarly, King's presentations to the homeowners' association could have been interpreted as negotiations for use of the streets or for provision of an access easement along a route other than the Branch 2 roadbed. The commissioner's factual finding on this point is supported by the evidence, and the court agrees with the conclusion he has reached.

Testimony of other witnesses called by King shows that the roadway, or parts of it, were once used from time to time by various persons who resided to the north of the existing subdivisions or who farmed land there. The commissioner considered that evidence and acknowledged that those earlier uses could be "tacked" to King's use except that there are fatal gaps between the periods when various persons used the road for access to those properties. During the "gaps," explained in detail by the commissioner (pp. 32-33) and supported by the evidence, the roadway was not used for years at a time in an open and continuous manner.

The character of the land over which this old roadway passes is significant. This is a rural area. The old roadway, or such traces of it as are still visible, meanders for the most part through thick woods. Portions of it have been superseded by Route 640 and the beds of subdivision streets. Thus, in order for its use to be open, visible, and notorious, so as to give the servient landowners reasonable notice of an adverse claim of right, much more is required than has been shown here.

For these reasons, the court agrees with the commissioner that the evidence does not establish that King has a prescriptive easement to his Bleak House Tract along the roadway known as Branch 2.

### Conclusion

The commissioner's report will be confirmed in all respects, including payment of his fee which the court finds fair and reasonable. Accordingly, King has no right to use the roadway in controversy as a member of the general public because the roadway is not a public road, and he does not have a prescriptive easement of access along the roadway across the plaintiffs' properties. It follows that the relief sought by the plaintiffs will be granted, and their respective titles will be quieted as to King's claim of right to use the old roadway across their properties.